## WILCOX *et al. vs.* KASSICK impleaded with another.

Debt on judgment rendered by the Supreme Court of the State of New York. Plea, that at the time of the commencement of the suit and recovery of the judgment, and during the intermediate time, defendant was a citizen of the State of Michigan; that no process was served on him; that he had no notice of the suit, and that he did not appear therein or authorize any one to appear for him. Replication, that the record avers personal service, and appearance by attorney, and that defendant is estopped by the record. Demurrer and joinder. *Held,* That the replication was good, and that the demurrer was not well taken.

GREEN, J., in delivering the opinion of the Court, came to the following conclusions:

First, That in an action in one State upon the judgment of a Court of general jurisdiction of another State, no plea or proof can be received in contradiction of any material fact appearing by the record, unless such plea or proof would be received in an action on the judgment in the Court in which it was rendered.

Second, That if the record shows a want of jurisdiction, the judgment is a nullity.

Third, That if the record does not show either that the Court had, or that it had not jurisdiction, the jurisdiction will be presumed; but in such case, facts showing a want of jurisdiction may be alleged by plea, and if established a recovery be defeated.

Fourth, That when the record shows the process was not personally served, and that the defendant did not appear in person in the suit, but that an attorney of the Court appeared for him and made defense, the *authority* of such attorney to appear will be presumed. Whether however, inasmuch as the *authority* of the attorney does not appear by the record, and might be denied without denying any fact directly stated in the record, it may be controverted, does not seem to be settled.

Another suit pending for the same cause of action in another State is not a good plea in bar.

A plea of the statute of limitations, that the plaintiff's cause of action did not accrue within six years next before the filing of the plaintiff's *amended* declaration, is bad.

Case reserved from Jackson Circuit Court. The declaration which was in debt, contained four counts. The first count was on a judgment recovered in the Supreme Court of the State of New York, to which the defendant pleaded *nul tiel record*, and a special plea, setting forth that at the time of the commencement of the suit against him and the other defendant in the State of New York, and of the recovery of the judgment, he was a citizen of the State of Michigan; that no process

was served on him and that he had no notice of the suit, and that he, did not authorize any one to appear for him, &c.   To the first plea, the plaintiff replied, taking issue thereon; and to the second plea, that the record avers personal service on defendant, and an appearance by R. S. Blannerhassett, as attorney, and that defendant was estopped by the record, &c.; to which replication defendant demurred, and plaintiff joined in demurrer.

To the second and third counts, which were on a bill of exchange, defendant pleaded in bar three pleas, viz: *nil debet;* a suit pending for the same cause of action in the Supreme Court of the State of New York; and *actio non accrevit* within six years next before filing *amended* declaration.   The plaintiff demurred to the second and third pleas and defendant joined in demurrer.

The fourth count was for goods sold, &c.   Pleas, *nil debet;* and the statute of limitations, the same as to the second and third pleas above; demurrer and joinder.

*Kimball & Sumner,* for plaintiffs.

*Chapman,* for defendant, Kassick.

By the Court, GREEN, J.

The action in this case is debt, and the first count is upon a judgment rendered in the Supreme Court of the State of New York, in favor of the plaintiffs against the defendants.   To this count the defendant Kassick, pleaded *nul tiel record,* and also a special plea, setting forth that at the time of the commencement of the suit in New York, and at the time of the recovery of the judgment, and during all the intermediate time, he was and has been, and that he still is a resident of the State of Michigan; and that he did not appear in person, or otherwise, and defend the suit in which the judgment was obtained, nor submit himself to the jurisdiction of the Court by any actual arrest in said suit, or any notice thereof to him personally, or by any voluntary appearance in such suit, either in person, or by any attorney by him authorized in that behalf.

To the first plea the plaintiffs replied, taking issue thereon, and praying an inspection of the record by the Court. To the second plea the plaintiffs reply, setting forth that in and by the record of said judgment, *it is stated, averred, and shown,* that the said defendants therein mentioned, were personally served with a copy of the declaration in said writ, together with a notice of a rule to plead therein, and also that it is in and by said record *stated, averred, and shown,* that the said defendants appeared and defended said suit, by R. S. Blannerhassett, their attorney therein; and they demand the judgment of the Court whether the said defendant ought to be admitted or received against the said record, to plead the matters set forth in said plea.

The defendant, Kassick, demurred to this replication, and the plaintiffs joined in demurrer. Thus the question is now distinctly presented to this Court, whether, in an action upon the judgment of a Court of general common law jurisdiction in a sister State, the record of such judgment, showing a personal service of the process by which the suit was commenced, and the appearance of the defendant by an attorney of the same Court, it is competent to contradict the facts which show jurisdiction of the person of the defendant, thus appearing on the face of the record.

By section 1 of article 4 of the constitution of the United States, it is declared that "full faith and credit shall be given, in each State, to the public acts, records, and judicial proceedings of every other State; and the Congress may, by general laws, prescribe the manner in which such acts, records, and proceedings shall be proved, and the effect thereof."

The act of Congress of May 26th, 1790, provides the mode of authenticating the records and judicial proceedings of the State Courts, and declares that "the said records and judicial proceedings authenticated as aforesaid, shall have such faith and credit given to them in every Court within the United States, as they have by law or usage in the Courts of the State from whence the said records are or shall be taken." Upon the construction of these provisions of the constitution and laws of the United States, depends the decision of this question.

From the adoption of the constitution and the enactment of the law before referred to, and prior to 1813, great contrariety of opinion pre-

vailed in regard to it, in the State Courts. In the earlier cases in which the question was presented for decision in New York and Massachusetts, it was holden that judgments rendered by the Courts of other States were open to examination, and might be impeached collaterally, on any of the grounds which would have been available when the matter was first presented for judicial determination. See Bartlett *vs.* Knight, (1 *Mass.*, 401;) and Hitchcock & Fitch *vs.* Aicken, (1 *Caines*, 460; 2 *American Leading Cases*, 551;) thereby placing such judgments, substantially upon the same footing as foreign judgments. A better consideration of the question gradually led to a sounder exposition of the constitution and act of Congress; and in the case of Bissell *vs.* Briggs, (9 *Mass.*, 462,) decided in 1813, the Supreme Court of Massachusetts held that a judgment rendered in New Hampshire, against a citizen of Massachusetts, who was admitted to have entered an appearance and taken defense in the action, was conclusive of the subject in controversy in a suit brought on the judgment in Massachusetts.

The question as to the effect of a judgment rendered in a Court of record of one State, when sued on in another Court within the United States, was first brought before the Supreme Court of the United States, and elaborately examined, and finally settled in the case of Mills *vs.* Duryee, (7 *Cranch*, 481,) in the same year; since which time the question has frequently been presented to the United States Courts, in various ways, and in their decisions there appears to be no conflict. To these Courts, and especially to the Supreme Court of the United States, in which resides the power of ultimate determination of questions arising under the constitution and laws of the United States, we are to look for controlling authority in all cases of this nature, so far as their judgment has been promulgated. A careful examination of the casse in which this point has arisen, and been adjudicated upon in the federal Courts, will enable us satisfactorily to apply the principles they establish, to the case before us.

The question in the case of Mills *vs.* Duryee, was, whether *nil debet* was a good plea to an action brought in the district of Columbia, upon a judgment rendered in a Court of record of the State of New York; and the Court held that it was not a good plea, but that the proper plea was *nul tiel* record. Mr. Justice Story, in delivering the opinion of the

Court, remarks: "It is argued that this act" (the act of 26th May, 1790) "provides only for the admission of such records as evidence, but does not declare the effect of such evidence, when produced. This argument cannot be supported. The act declares that the record, duly authenticated, shall have such faith and credit as it has in the State Court from whence it is taken. If, in such Court it has the faith and credit of evidence of the highest nature, viz: record evidence, it must have the same faith and credit' in every other Court. Congress has therefore declared the effect of the record, by declaring' what faith and credit shall be given to it. It remains then, only to inquire in every case, what is the effect of a judgment in the State where it is rendered."

The case of Hampton *vs.* McConnel, (3 *Wheaton,* 234,) was decided in the year 1818; and Chief Justice Marshall delivered the opinion of the Court, as follows:

"This is precisely the same case as that of Mills *vs.* Duryee. The Court cannot distinguish the two cases. The doctrine there held, was that the judgment of a State Court should have the same faith, validity and effect, in every other Court in the United States, which it had in the State where it was pronounced, and' that whatever pleas would be good to a suit thereon in such State, and none others, could be pleaded in any other Court in the United States."

The case of Field *vs.* Gibbs & Gibbs, (1 *Peters C. C. R.,* 156,) was an action of debt, in the Circuit Court of the United States for New Jersey, on a judgment of a Court of Common Pleas in Pennsylvania. Martin Gibbs, one of the defendants, pleaded specially that he had never appeared in, or had notice of the suit, &c. To this plea a demurrer was interposed, in which the defendant joined. It appeared by the record that both the defendants were attached in that suit, to answer the plaintiff, and that they both appeared by their attorney, and pleaded several pleas. Judge Washington, in his opinion in that case, remarks, that "to allow the defendant, (Martin Gibbs,) to show that he did not appear in the cause, or authorize any person to appear for him, would be to allow him to contradict the record;" and this the Court held was inadmissible. The Judge cites and applies to that case, the language of Lord Coke, that "a record imports in itself such incontrollable credit and verity, that it admits of no averment, plea or proof to the contrary;

22

for otherwise there never would be an end of the controversy." (*Coke on Lit.*, 260.) The same doctrine was held by the same Judge in the case of Green *vs.* Sarmiento, (1 *Peters, C. C. R.*, 74,) in the year 1810; and as early as 1794, the Circuit Court of the United States for the District of Pennsylvania, in the case of Armstrong *vs.* Carson's. Executors, (2 *Dallas*, 302,) decided that *nil debet* was not a good plea to an action of debt on a judgment rendered in the Superior Court of New Jersey. In the last named case, Judge Wilson insisted that no defense was admissible to an action on a judgment of another State, which would not have been available had the suit been brought in the State where the judgment was rendered.

In Jacquette *vs.* Hugunon, (2 *McLean*, 129,) decided in the Circuit Court of the United States, for the District of Illinois, in 1840, it was determined that *nil debet* was not a good plea to an action on a judgment obtained in New York. The opinion of the Court in that case is very brief, and the doctrine is treated as well settled in the Courts of the United States. In the following year, the question whether it was competent, by plea, to controvert the statement in the record of a judgment rendered in Massachusetts, that the defendant was served with process, or appeared in the suit, was presented to the same Court, in the case of Lincoln *vs.* Power, (2 *McLean*, 473,) and the Court decided it was incompetent. The Court say, "the appearance of the defendant is a material fact, and so is the service of process. It is admitted that the allegations in a record which were not material nor traversable, are not conclusive on the parties. But the record is conclusive of all matters in relation to the judgment which were material, and which might have been traversed, and these cannot be contradicted."

In the same 'Court and during the same term, the case of Westervelt *vs.* Lewis & Tooker was decided. That was an action of debt brought on a judgment obtained by the plaintiff against the defendants in the State of New York. The defendants pleaded: first, *nil debet*; second, that no notice was served on the defendants before the rendition of the judgment; to both of which the plaintiff demurred, and the defendants joined in demurrer. The Court sustained the demurrer, and in their opinion say, that when the fact that the Court had jurisdiction of the person of the defendant appears by the record, it cannot

be controverted. "As well," say the Court, "might any other fact in, the record be denied as this. The record is made out under the authority of the Court and purports absolute verity. As evidence, it can not be questioned. If, in making up the record, through the inadvertence of the Clerk a mistake has occurred, the only mode of correcting it is by application to the Court who gave the judgment, and who have a right at all times to correct clerical errors." (2 *McLean*, 511.) The case of McElmoyne *vs.* Cohen, decided in the Supreme Court of the United States in 1839, (13 *Peters*, 312,) brought again under review the provisions of the Constitution and act of Congress referred to, and the doctrine of the cases of Mills *vs.* Duryee, and Hampton *vs.* McConnell is there illustrated and affirmed.

With this array of harmonious decisions of the Courts of the United States before us, and with the concession on the part of the State Courts, that they are bound by the determinations of the Supreme Court of the United States upon questions of this character, and that the decisions of the Circuit Courts of the United States are entitled to great respect, it would seem that the question now under consideration in this Court, ought to be considered as settled beyond dispute; but an examination of a few of the more recent decisions of the State Courts, will show that while some of them seem to have yielded a reluctant assent to the principles established in Mills *vs.* Duryee, and Hampton *vs.* McConnel, others have either boldly questioned their soundness, or adopted them with much qualification.

The case of Starbuck and others *vs.* Murray, (5 *Wend.*, 148,) was decided in 1830. It was an action of debt on a judgment rendered in a Court of Common Pleas of the State of Massachusetts. The defendant pleaded specially, that the suit in which the judgment was rendered was commenced no otherwise than by *attachment* of certain goods and chattels, then being at Boston, in the State of Massachusetts; that at the time of the commencement of such suit, he was, and ever since had been, and still was a resident and inhabitant of the State of New York; that no process of any kind had ever been served upon him in the suit, and that he never appeared thereto, in person or by attorney. To this plea the plaintiffs replied, that the defendant ought not to be admitted to plead, &c., "because the judgment record declares and avers, that at

the term of the Court of Common Pleas at which the suit was commenced, the defendant appeared to the said suit; and this they are ready to verify by the record; wherefore," &c.

This replication was demurred to by the defendant, and the plaintiffs joined in the demurrer. Thus the question was distinctly presented for adjudication, whether a fact stated in the record, showing jurisdiction of the Court over the person of the defendant, could be controverted by plea, and the Court sustained the plea, controverting such fact. See also Borden *vs.* Fitch, (15 *J. R.,* 121;) Andrews *vs.* Montgomery, (19 *J. R.,* 162.) In Shumway *vs.* Stillman, (6 *Wendell,* 447,) the Court held, that in an action of debt brought on a judgment of a Court of Massachusetts, the defendant might deny the authority of an attorney who appeared for him in the suit in which the judgment was rendered, though the fact of such appearance was stated in the record. The Court say, in substance, that this is not a contradiction of the record, the *authority* of the attorney to appear, being no part of such record, and the appearance of the attorney being only *prima facie* evidence of his authority. Chief Justice Savage, in delivering the opinion of the Court, after an extensive review of the adjudged cases in the Courts of New York, Massachusetts, and of the United States, sums up the result as follows: "An examination of the cases results in the establishment of the following proposition: that the judgment of a Court of general jurisdiction in any State in the Union, is equally conclusive upon the parties in all the other States, as in the State in which it was rendered. This, however, is subject to two qualifications: 1. If it appear by the record that the defendant was not served with process, and did not appear in person or by attorney, such judgment is void: and 2. If it appear by the record that the defendant appeared by attorney, the defendant may disprove the authority of such attorney to appear for him." This case was followed by several others, in which the Supreme Court of New York gradually receded from the general doctrine, that any fact might be pleaded in opposition to the record, showing a want of jurisdiction over the person of the defendant, as laid down in broad terms in the case of Starbuck *vs.* Murray, and supported with much earnestness by Mr. Justice Marcy, (23 *Wendell,* 303; 1 *Hill,* 597.) And though the question has not been definitely settled in that State,

yet in Read *vs.* Pratt, (2 *Hill*, 64,) decided in 1841, Judge Cowen, in delivering the opinion of the Court (Bronson, J. dissenting) says: "The appearance of an attorney in a Court of record, whether with or without actual authority, is a good appearance as to the Court, and so far binding upon the party, that he cannot question its validity in a collateral way. Constitutionally we are bound to give *full faith and credit* to a record or judicial proceeding in a neighboring State, which asserts the fact of an appearance by an attorney in one of its Courts. That measure of faith could hardly be called full, which should allow to be raised collaterally, a question against which our own records would conclude. It is by no means clear, therefore, that the party aggrieved should not be turned over to the foreign Court for relief."

This language shows pretty clearly what was then the opinion of the judges of that Court, and that if the question had been distinctly presented, they would have decided that no material fact stated in the record, could be controverted by plea.

The Supreme Court of Pennsylvania, in the case of Benton *vs.* Burgot, (10 *Serg. & Rawle*, 240,) in 1823, decided that pleas to an action on the judgment of a Court of a sister State, setting up fraud, imposition and mistake in obtaining it, and a want of consideration, were bad on demurrer. Duncan, Chief Justice, in delivering the opinion of the Court in this case, refers to the opinion of the Supreme Court of the United States in the cases of Mills *vs.* Duryee and Hampton *vs.* McConnel, giving a construction to the provisions of the Constitution and act of Congress, upon which the decision of those cases depended, and acknowledges the controlling authority of that Court in their construction.

In Vermont, the Supreme Court in the case of Hoxie *vs.* Wright, (2 *Vermont R.*, 263,) decided in 1828, acknowledged the doctrine of the cases decided in the Courts of the United States, to its full extent.

In the Supreme Court of Massachusetts, the first case after the decis- in Mills *vs.* Duryee was promulgated, in which the question was again presented, was that of the Commonwealth *vs.* Green, in 1822. (17 *Mass.*, 545.) In this case, Ch. J. Parker, after referring to the opinion delivered by Parsons, Ch. J., in Bissell *vs.* Briggs, says: "The Supreme Court of the United States have carried the sanctity of judgments

still further, having, in the two cases of Mills *vs.* Duryee and Hampton *vs.* McConnel, decided that *nil debet* was not a good plea to an action upon a judgment of another State, and indeed, that no plea would be good, except such as would be allowed in the Courts of the State in which the judgment was rendered; thus establishing an identity in operation and effect, between judgments rendered in the Courts of the same State, and in those of other States. Over a question of this nature, the construction of the Constitution and laws of the United States, that Court has the final and conclusive authority, so that their decision must be taken to be the law of the land. There can be therefore, while these decisions stand, no further doubt as to the effect of the judgments of the Courts of one State in those of another." Yet the same Judge, six years afterwards, when this doctrine came again under review in the case of Hall and others *vs.* Williams and others, (6 *Pickering*, 232,) after a more careful examination of the decisions of the Supreme Court of the United States, says: "This construction when first referred to in this Court in the case of the Commonwealth *vs.* Green, was supposed to have put an end to all questions on this subject, and to have established as the law of the land, that a judgment recovered in one State by a citizen thereof against a citizen of another, was absolute and incontrovertible, and would admit of no inquiry even as to the jurisdiction of the Court that rendered it. This Court yielded a painful deference to the decision, without that close examination it would have received if presented to them otherwise than incidentally, and if its bearing had been of importance in the case then before the Court; but the notice taken of the case was merely the expression of an opinion *arguendo*, and not a judicial determination of the question." The result to which the Court arrived in this case, after an elaborate review of the authorities, was the same in substance as that deduced from the decisions by Ch. J. Savage, in Shumway *vs.* Stillman, (6 *Wend. R.,* 447.) Ch. Justice Parker, in delivering the opinion of the Court, remarks: "If it appeared by the record that the defendants had notice of the suit, or that they appeared in defense, we are inclined to think that it could not be gainsaid; for as we are bound to give full faith and credit to the record, the facts stated in it must be taken to be true judicially; and if they should be untrue, by reason of mistake or

otherwise, the aggrieved party must resort to the authorities where the judgment was rendered for redress; for he could not be allowed to contradict the record by a plea, and by an issue to the country thereon. But if the record does not show any service of process, or any appearance in the suit, we think he may be allowed to avoid the effect of the judgment here, by showing that he was not within the jurisdiction of the Court which rendered it;" and he concludes the opinion in the following language: "The full faith and credit required to be given in each State to the judicial proceedings of other States, will prevent any evidence to contradict the facts which show a jurisdiction, if such appear on the record." Afterwards, in the same term, the case of Woodward *vs.* Tremere and others was decided, in which the same doctrine was applied, (6 *Pick.*, 354,) and I am not aware that it has since been questioned in the Courts of that State.

In those cases where the Courts have held that facts appearing upon the record, showing jurisdiction, might be controverted in an action upon the judgment in another State, it has been argued in favor of such conclusion as in the case of Starbuck *vs.* Murray, before cited, that unless a Court has jurisdiction, it can never make a record which imports uncontrollable verity to the party over whom it has usurped jurisdiction, and he ought not, therefore, to be estopped by any allegation in that record, from proving any fact that goes to establish the truth of a plea alleging a want of jurisdiction; that to say that the defendant may show the supposed record to be a nullity, by showing a want of jurisdiction in the Court which made it, and at the same time to estop him from doing so, *because the Court have inserted* in the record an allegation which he offers to prove untrue, seems to be inconsistent; and that under the operation of such a rule a Court could always sustain its jurisdiction, if it had any solicitude to do so; or rather, that the party who had the benefit of its decision, and who, by the practice of most tribunals, is entrusted with making the record, would not fail to put it beyond the power of his opponent to show a want of jurisdiction. (5 *Wend.*, 148.) In considering the validity of this course of argument, the question forces itself upon the mind irresistibly, whether the Supreme Court of New York or of Massachusetts, ever adopted, or would for a moment listen to such, or any similar arguments, in a suit brought

upon a record of one of its own judgments? and if not, does not this argument clearly imply a *want* of that *faith* and *credit* which the constitution and law of Congress obliges the Courts in every State to give to the records and judicial proceedings of the Courts of every other State? To say that under the operation of a rule, which a State Court unhesitatingly applies to its domestic records of judgments, a Court, of equal and the highest dignity, of a sister State, could always sustain its jurisdiction, if it had any solicitude to do so; and for that reason, to allow facts appearing upon its records material to the validity of its judgments, to be controverted by plea, and disproved upon an issue to the country, seems to me to be treating such records with more doubt and suspicion of their integrity, than with faith and credit.

That the Courts of New York would not allow the fact of personal service of the declaration and notice of rule to plead, appearing upon the record in the case before us to be controverted by plea or proof, in an action brought upon the judgment in that State, there can be no doubt. (*Adams* vs. *Gilbert*, 9 *Wend.*; *Jackson* vs. *Stewart*, 6 *J. R.*, 34; *Denton* vs. *Noyes*, 6 *J. R.*, 296; *Green* vs. *Ovington*, 16 *J. R.*, 55.) See also (*Smith* vs. *Bowditch*, 7 *Pickering*, 137.) But it is said that the doctrine that the jurisdiction of the Court rendering a judgment may be inquired into when a suit is brought in the Courts of another State on that judgment, notwithstanding what may appear upon the record, does not depend merely upon the authority of adjudged cases, but has a better foundation; that it rests upon a principle of natural justice; that no man is to be condemned without the opportunity of making a defense, or to have his property taken from him by a judicial sentence, without showing, if he can, the claim against him to be unfounded. This great principle of natural justice will never be denied here; but is the right which it acknowledges and protects violated, by making the record conclusive? In the case of Hoxie vs. Wright, the Supreme Court of Vermont say, that if the defendant was entitled to relief, he might, on good cause shown, have obtained a stay of proceedings in the action then pending, while he had pursued, or had time to pursue, any remedy open to him; and if he had paid the demand on which the judgment was rendered, &c., it would unquestionably have

furnished ground for an *audita querula,* or a motion to set aside the judgment. So in Field *vs.* Gibbs & Gibbs, (1 *Peters C. C. R.,* 156,) the Court say, "if the defendant had no notice of the suit, the Court in which the judgment was given, would, upon notice, accompanied by sufficient proof, stay the execution and set aside the judgment." See also Lincoln *vs.* Town, (2 *McLean,* 476.) By debarring a defendant from attacking the record of a judgment against him collaterally, in an action brought in another State, he is not therefore condemned without the opportunity of making a defense, nor is his property taken from him by a judicial sentence, without an opportunity of showing the claims against him to be unfounded, if he can do so.

The conclusions to which I have arrived and which I think are well sustained by the authorities are: *First,* That in an action in one State upon the judgment of a Court of general jurisdiction of another State, no plea or proof can be received in contradiction of any material fact appearing by the record, unless such plea or proof would be received in an action upon it in the Court in which it was rendered.

*Second,* That if the record shows a want of jurisdiction, the judgment is a nullity.

*Third,* That if the record does not show, either that the Court had, or that it had not, jurisdiction, the jurisdiction will be presumed; but in such case, facts showing a want of jurisdiction may be alleged by plea, and if established a recovery may thus be defeated; and

*Fourth,* That when the record shows that the process was not personally served, and that the defendant did not appear in person in the suit, but that an attorney of the Court appeared for him and made defence, the *authority* of such attorney so to appear will be presumed.

Whether however, inasmuch as the *authority* of the attorney does not appear by the record, and might be controverted without denying any fact directly stated therein, it may be controverted, does not seem to be settled. It is pretty clear however, that in New York, in an action upon judgment of their own Courts, a defendant would not be allowed to question the authority of the attorney who appeared for him, and defended the suit; but if there were a fraudulent collusion between the attorney and the other party or his attorney, or if such attorney were worthless and unable to respond in damages, the party aggrieved would

23

be obliged to seek his remedy by a direct application to the Court in which the judgment was rendered, to set it aside, or open it so as to afford an opportunity for defense.

Applying the principles just stated, to the case under consideration, it follows that the replication to the second plea to the first count of the declaration, is good; and that the demurrer thereto must be over-ruled.

Two other questions of law are presented by the pleadings in this case, about which there can be no doubt. The first is, whether the de-fendant's plea to the second count of the declaration, of another suit for the same cause of action pending in the Supreme Court of New New York, is a good plea *in bar*. It is certainly not a plea to the merits, and if the matter of it would be good by way of plea at all, it could only be pleaded in abatement. (*Gould's Pleadings*, 2d ed., 283; 1 *East.*, 634; 9 *J. R.*, 221; 12 *Ib.*, 99.) The other question is, whether the defendant's plea of the statute of limitation to the second, third and common counts of the declaration is sufficient to bar the plain-tiff's action. The plea sets forth that the said several supposed causes of action in the second, third and common counts of the said amended declaration mentioned did not, nor did any or either of them, accrue to the said plaintiffs at any time within six years next before the filing of the said amended declaration, &c. This plea is clearly bad. It is the commencement of the suit which fixes the rights of the parties, so for as the statute of limitations is concerned, and there is no precedent of a plea referring to a date subsequent to that time. No case has been referred to, which by any analogy appears to sustain such a plea, nor have I been able to find one; on the contrary, the authorities on this point seem to be all the other way. (6 *Hill*, 488; 6 *Wend.*, 506; 1 *Ib.*, 93.) The case of Green *vs.* Gill, (5 *Mass.*, 379,) referred to by defendant's counsel, affords no countenance, so far as I can discover, to the doctrine contended for by him; neither does the case of Granger *vs.* George. (11 *Eng. Com. L. R.*, 185.)

Finally, it is the opinion of this Court, that judgment should be ren-dered in favor of the plaintiffs and against the defendant, upon all the demurrers.