## JOHN J. MASTIN v. BARZILLAI GRAY, et al.

JURISDICTION OF PERSON; JUDGMENT; *When False Return of Service May be Impeached.* In an action to recover possession of real property, it was shown that the plaintiff's title was founded upon a sheriff's deed made in pursuance of a sheriff's sale on an execution issued by the clerk of the district court on a transcript of a judgment of a justice of the peace filed in said clerk's office, which judgment was rendered on default against J. H. B., the then owner of the land in controversy, on a constable's return of service of summons, which return stated that said writ was "executed on the 15th December 1860, by leaving a certified copy at the usual place of residence" of said J. H. B. The district court permitted the defendant to impeach said deed, judgment, and constable's return, by showing that the said return was false, that the said J. H. B. was not at the time a resident of Kansas, that she had no residence in Kansas, and was not herself in Kansas, but at that time, and for a long time before and afterward, she resided and was herself personally in the Indian Territory. *Held,* That the court in this did not commit error.

*Error from Wyandotte District Court.*

EJECTMENT brought by *Mastin*, as plaintiff, against *Gray* and two others as defendants. *Gray's* co-defendants were tenants, holding under him. *Mastin* claimed title in fee to the land sued for, and claimed the right of possession. *Gray* admitted possession in himself, and claimed as purchaser from the original owner. All the facts are stated in the opinion.

Trial at the April Term 1876. Judgment for defendants, and plaintiff brings the case here.

*F. M. Black,* and *D. B. Hadley,* for plaintiff.

*B. Gray,* defendant, for himself.

The opinion of the court was delivered by

VALENTINE, J.: This was an action in the nature of ejectment. The plaintiff claims title to the land in controversy, under a sheriff's deed, purporting to convey such land from one Jane Hicks Brown, the judgment-debtor, to one of the persons under whom the plaintiff claims. The defendant Gray claims title under a deed executed by said Jane Hicks Brown herself. The main question in the case is, whether said sheriff's deed is valid or not. But involved in this question are these other questions: Can a constable's return of service on an original summons in a justice's court, and all subsequent proceedings founded thereon, including a sheriff's deed, be impeached in an action in the nature of ejectment by evidence *aliunde* showing said constable's return to be false, and showing that the defendant, in the justice's court, never in fact had any notice of the pendency of the suit in such court?

It appears from the record in this case that, on the 15th of December 1860, one S. P. Bartlett commenced an action in a justice's court, in Wyandotte county, on two promissory notes against said Jane Hicks Brown. A summons was duly issued by the justice and delivered to H. H. Sawyer, constable. Afterward the constable returned the same with the following indorsement thereon, to-wit: "Executed on the 15th December 1860, by leaving a certified copy at the usual place of residence of the within named defendant, Jane Hicks Brown. —H. H. Sawyer, constable." Jane Hicks Brown made no appearance in the justice's court; and therefore the justice at the proper time rendered judgment against her by default for $38.85 and costs. A transcript of this judgment was duly filed in the district court, execution was issued thereon, said land was sold under the same, the sale was duly confirmed

by the district court. The sheriff then, on March 25th 1865, executed a deed for the land to the purchaser, which deed was duly recorded February 1st 1866. The purchaser took possession of the land under his deed, and he and those holding under him continued to hold the possession thereof until in 1871, when B. H. Tertelling the then holder of said land under said sheriff's deed, having mortgaged the land to the plaintiff in this case, and having become a bankrupt, abandoned the land, and Barzillai Gray, the holder of the adverse title, took possession thereof. The land was sold under the bankruptcy proceedings against Tertelling, and Mastin, the plaintiff in this action, became the purchaser for the purpose of obtaining payment of his said mortgage. He received his deed from the assignee in bankruptcy on the 30th of August 1872. Now if said sheriff's deed is valid, then the land in controversy belongs to the plaintiff Mastin; but if it is not valid, then the land belongs to defendant Gray; and the whole question depends upon the validity or invalidity of said constable's return. It also appears from the record in this case that Jane Hicks (that was her maiden name) was a Wyandotte Indian woman. In the spring of 1860, she resided in Wyandotte county, in this state, with a Wyandotte Indian man by the name of Leander Brown. Whether they were married or not, is not shown. During that spring they had a misunderstanding, and Jane Hicks left Brown and went to the Indian Territory to reside. Afterward Brown married another woman, with whom he lived for seven years; but in 1869 he commenced to live with Jane Hicks again. Jane Hicks remained in the Indian Territory during the whole of the remainder of the year 1860, after she first went there, and she had no residence in Kansas after the spring of 1860. Therefore the return of the constable, that he served said summons on the 15th of December 1860, "by leaving a certified copy at *the usual place of residence*" of said Jane Hicks Brown, cannot be true. He probably left the copy at the residence of said Leander Brown, but whether he did or not, is not shown by the record.

We now come to the question whether said constable's return, and the subsequent proceedings founded thereon, including the sheriff's deed, can be impeached in this action by evidence *aliunde*. A sheriff's deed founded on a void judgment is of course void. *North v. Moore*, 8 Kas. 143; *Shields v. Miller*, 9 Kas. 390. A judgment rendered without jurisdiction is void. *Butcher v. Bank*, 2 Kas. 70. And a personal judgment, rendered without notice to the defendant, is rendered without jurisdiction, and is consequently void. *Case v. Hannahs*, 2 Kas. 490, 496; *K. P. Rly Co. v. Streeter*, 8 Kas. 133. This far we think all the authorities agree. A sheriff's return of service of original process may, in a direct proceeding, and before judgment, be impeached so far as such return states facts which do not come within the personal knowledge of the sheriff himself; such facts, for instance, as where "the usual place of residence" of the defendant is located. *Bond v. Wilson*, 8 Kas. 228. (This proposition is denied in Missouri: *Hallowell v. Page*, 24 Mo. 590.) In many cases such a return may be impeached for falsity, even after judgment is rendered thereon; and the judgment itself may be declared void. *Knowles v. Gaslight Co.*, 19 Wall. 59; *Carleton v. Bickford*, 13 Gray, 591; *Norwood v. Cobb*, 15 Texas, 500; same case, 24 Texas, 551. And probably in all cases such a return may be impeached in a direct proceeding to perpetually enjoin the judgment founded on such return, because of the falsity of such return. *Chambers v. Bridge Co.*, 16 Kas. 270; *Earl v. McVeigh*, 91 U. S. 503; 3 Cent. L. J. 689. (This proposition is also disputed; and particularly in Nebraska it is disputed: *Johnson v. Jones*, 2 Neb. 126. Though in the Nebraska case it was really not necessary for the court to decide the question.)

A judgment void for want of notice may be set aside at any time even after the lapse of more three years, on a motion made therefor by the defendant. *Foreman v. Carter*, 9 Kas. 674. And this may be done in some cases even where it requires extrinsic evidence to show that the judgment was rendered without notice and without jurisdiction. *Hanson v.*

*Wolcott,* ante, 207. Where the record itself shows that the judgment was rendered without notice, and without jurisdiction, all the courts unite in holding that the judgment is void, and may be impeached anywhere, and collaterally as well as directly. Where the record is silent on the subject, a majority of the courts hold that the record may be impeached collaterally as well as directly, and by extrinsic as well as internal evidence. And a great majority of the courts hold that a judgment from another state may be impeached for want of jurisdiction collaterally as well as directly, and by extrinsic evidence as well as by the record itself. (*Litowich v. Litowich,* ante, p. 451, and cases there cited.) But the difficult question to determine arises when it is attempted to impeach a domestic judgment collaterally, and by extrinsic evidence. There are authorities which hold that it cannot be done. *Hahn v. Kelley,* 34 Cal. 391; *McDonald v. Leewright,* 31 Mo. 29; *Callen v. Ellison,* 13 Ohio St. 446; *Johnson v. Jones,* 2 Neb. 126; *Willcox v. Kassick,* 2 Mich. 165; *Granger v. Clark,* 22 Me. 128; *Cook v. Darling,* 18 Pick. 393; *Finneran v. Leonard,* 7 Allen, 54; *Lightsey v. Harris,* 20 Ala. 409; *Coit v. Haven,* 30 Conn. 190. While there are other authorities which hold that it may be done. *Ferguson v. Crawford,* decided by the New York Court of Appeals, September 18, 1877, 4 Law & Eq. Rep. 682; *Adams v. Saratoga & Wash. Rld. Co.,* 10 N. Y. 328, 332; *Bolton v. Jacks,* 6 Robert. (N. Y.) 166, 198; *Porter v. Bronson,* 29 How. Pr., 292; *Tebbetts v. Tilton,* 31 N. H. 273; *Sanborn v. Fellows,* 22 N. H. 273, 288. And there are many authorities which tend to uphold the doctrine that any judgment rendered without jurisdiction may be impeached in any proceeding; and that in doing so, anything contained in the record, (of which such judgment forms a part,) purporting to give or prove jurisdiction, such as the recital of a sheriff's return, or service of summons, or a service by publication, or any constructive service, or any appearance by attorney, or a finding by the court of such service, notice, or appearance, may be impeached and contradicted by any evidence, extrinsic as well as in-

trinsic, and may be shown to be untrue and false. *Elliott v. Piersoll*, 1 Pet. 328, 340; *Hickey v. Stewart*, 3 How. 750; *Shelton v. Tiffin*, 6 How. 163; *Williamson v. Berry*, 8 How. 495, 540; *Webster v. Reid*, 11 How. 437, 460; *Thompson v. Whitman*, 18 Wall. 457; *Knowles v. Gaslight Co.*, supra; *Earl v. McVeigh*, supra; *Borden v. Fitch*, 15 Johns. 121, 141; *Latham v. Edgerton*, 9 Cow. 227; *Starbuck v. Murray*, 5 Wend. 148, 156; *Shumway v. Stillman*, 6 Wend. 448, 453; *Dobson v. Pearce*, 12 N. Y. 164; *Kerr v. Kerr*, 41 N. Y. 272; *Rape v. Heaton*, 9 Wis. 328, 332; *Pollard v. Wegener*, 13 Wis. 569, 576; *Russell v. Perry*, 14 N. H. 152; *Norwood v. Cobb*, 15 Texas, 500; same case, 24 Texas, 551; *Hovan v. Wahrenberger*, 9 Texas, 313; *Price v. Ward*, 25 N. J. L. (1 Dutch.) 225; *Carleton v. Bickford*, 13 Gray, 591; *Aldrich v. Kinney*, 4 Conn. 380; *Miller v. Handy*, 40 Ill. 448; *Cooper v. Sunderland*, 3 Iowa, 114, 127; *Pollard v. Baldwin*, 22 Iowa, 328.

The decisions upon the question which we are now discussing are conflicting and contradictory, and of course they cannot all be good law. The case of *Hahn v. Kelley*, supra, is disapproved in the case of *Galpin v. Page*, 3 Sawyer, 94, 106, (this last decision following that of *Galpin v. Page*, 18 Wall. 350.) The case of *McDonald v. Leewright*, supra, is decided upon the sole ground that a sheriff's return cannot be impeached in any case, except in an action against the sheriff for a false return, which ground, as we have already seen, is wholly untenable in Kansas. The case of *Callen v. Ellison*, supra, seems to enunciate the doctrine that a judgment rendered upon an appearance by an attorney, cannot be impeached in a collateral proceeding by showing that such attorney had no authority to make any such appearance. The decision in the case last mentioned may perhaps not go quite to this extent. If it does not, then it is not applicable to this case; but if it does, then it will be found to be in conflict with the following decisions heretofore cited, to-wit: *Shelton v. Tiffin*, *Starbuck v. Murray*, *Shumway v. Stillman*, *Kerr v. Kerr*, *Price v. Ward*, and *Aldrich v. Kinney*. See also, *Bodurtha v. Goodrich*, 3 Gray, 508.

The decision in the Nebraska case of *Johnson v. Jones,* supra, relating to the impeachment of judgments for want of jurisdiction, is but little more than *dictum,* and very bad *dictum* too.   The case itself would have been decided in precisely the same way that it was decided, even if the question of jurisdiction had not been raised.   The effect of this decision, or rather *dictum,* is as follows:  Where a judgment is rendered against a person who has never had any notice either of the action or of the judgment, he must, nevertheless, take notice thereof within the time "provided by law for appeal, review, rehearing, or impeachment by writ of error," and resort to such remedy, or he will be forever remediless.   It is his own fault if he does not ascertain within such time that such judgment was rendered against him.   He has no right to remain ignorant of the rendition of such judgment, and consequently to remain quiet and inactive.   He has no right to wait until he receives actual notice of the judgment, by an attempt being made to enforce it against him; and if he does so wait, he cannot then maintain an action to have the judgment declared void, or to perpetually enjoin its enforcement.

The Michigan case of *Willcox v. Kassick,* supra, was an action of debt on a judgment from a sister state.   The record upon its face showed jurisdiction, and the judgment appeared to be valid; and the court in that case held that such judgment could not be impeached for want of jurisdiction.   There are other cases holding the same thing which we have not cited.   They so hold upon the theory that a judgment from a sister state is just as good as a domestic judgment, and that a domestic judgment could not be so impeached.   The theory that a judgment from a sister state is entitled to the same faith and credit as a domestic judgment, is unquestionably correct.   It is sustained by all the authorities, from the decision in the case of *Mills v. Duryea,* 7 Cranch, 484, down to the present day.   And of course, if a domestic judgment cannot be impeached collaterally, and by extrinsic evidence, a judgment from a sister state cannot be so impeached.   But

the authority is now overwhelming that a judgment from a sister state may be so impeached. (See cases cited in case of *Litowich v. Litowich*, ante, p. 451.) And hence the decision in the case of *Willcox v. Kassick* cannot be considered as very high authority for the doctrine that a domestic judgment cannot be impeached.

The cases of *Granger v. Clark*, and *Cook v. Darling*, supra, do not seem to have received much consideration from the courts that decided them ; and the decision in the case of *Finneran v. Leonard*, supra, is founded on that in the case of *Cook v. Darling*. The case of *Cook v. Darling* makes a distinction between the records of courts of superior jurisdiction and courts of inferior jurisdiction — holding that a judgment of an inferior court may be impeached collaterally for want of jurisdiction, while a judgment of a superior court cannot be so impeached. The judgment sought to be impeached in the case at bar is a judgment of a court of inferior jurisdiction. The case of *Lightsey v. Harris*, supra, is very much like the case of *McDonald v. Leewright*, supra. The case of *Coit v. Haven*, supra, is like the case of *Cook v. Darling* in making a distinction between courts of superior and inferior jurisdiction.

Several of the cases cited as showing that judgments may be impeached collaterally for want of jurisdiction, are open to objections as to their exact applicability to the case at bar. But still it will be found in all of them that either the decision of the court itself, or the language of the judge in delivering the opinion of the court, is applicable. Of course, all decisions made by state courts concerning the impeachment of domestic judgments collaterally, and by extrinsic evidence, are exactly applicable to the present case, unless such decisions are controlled by local statutes. Also all decisions made by federal courts, in cases commenced in the same state in which the judgments sought to be so impeached were rendered, are clearly applicable. ·(This includes the decisions in the cases of *Elliott v. Piersoll*, *Hickey v. Stewart*, *Shelton v. Tiffin*, *Williamson v. Berry*, and *Webster v. Reid*, supra.) If

this case had been commenced in the federal courts instead of in the state courts, as it was, the federal courts would undoubtedly have allowed the said judgment against said Jane Hicks Brown to be impeached. We also think that all decisions of state courts allowing judgments from other states to be impeached collaterally, and by extrinsic evidence, are applicable to this case. It is now settled beyond all controversy that judgments from sister states, wherever they can be used, are entitled to the same faith and credit as domestic judgments. That is, although an execution cannot be issued upon them directly, nor are they liens upon real estate directly, yet when they are sought to be used as evidence, or as the foundation for other actions, they are entitled to the same faith and credit as domestic judgments. Now, as nearly all courts hold that judgments from sister states may be impeached collaterally for want of jurisdiction, and by extrinsic evidence, it is substantially a holding that domestic judgments may also be impeached under like circumstances. Proceedings instituted for the purpose of destroying, impairing, or modifying the force or effect of a judgment for all cases, such as proceedings to reverse, vacate, set aside, declare void, suspend, modify, or perpetually enjoin a judgment, are direct proceedings. But a proceeding instituted for some other purpose, and in which the question of the force or effect of the judgment arises only incidentally, is a collateral proceeding. A judgment rendered with jurisdiction can never be impeached in a collateral proceeding; but a judgment rendered without jurisdiction may. In fact, a judgment rendered without jurisdiction is no judgment at all. A judgment cannot be rendered against any person until he has had his day in court, and until he has had an opportunity to be heard. To say that the record of a judgment can conclusively prove that any person was a party to the action in which it was rendered, and then to say that the judgment is conclusively valid because he was a party, is to reason illogically. It is begging the question. It is reasoning in a circle. That is, the judgment proves that he was a party, and being a party

proves the validity of the judgment. There was no finding in this case by the court rendering the judgment that said Jane Hicks Brown was served with notice, or that she was in fact a party to the suit; but even a finding to that effect could not make any difference, for a court cannot make a finding against a person until after the court has obtained jurisdiction of such person.

In an action in the nature of ejectment, such as the present action is, the validity of a judgment under which either party claims title, is just as much in issue as the validity of any judgment in any action can be. But there is this difference: in the most of actions, where the validity of a judgment is put in issue, the pleadings must specifically show the issue. But in ejectment this is not necessary. In ejectment all that is necessary for the plaintiff to do is to allege in his pleading "that he has a legal or equitable estate" in the land in controversy, describing the same, and that he "is entitled to the possession thereof;" while all that is necessary for the defendant to do is simply to deny the plaintiff's allegations. And then everything is in issue that will sustain either title or defeat either title; and each side is bound to take notice thereof. Everything is in issue as much as though it was set out in the pleadings in the most elaborate detail, and with the greatest circumstantial particularity. Probably no action, except one to reverse, vacate, modify, suspend, or perpetually enjoin a judgment, can be said to be a direct attack upon such judgment. And if not, then ejectment cannot be a direct attack upon any judgment. But where the validity of a judgment is in issue in ejectment, the attack upon the judgment is as direct as it can be in any other action, except an action to reverse, vacate, modify, suspend or perpetually enjoin the judgment, and the parties are in law and by the nature of the action bound to take notice of this attack just as much as they would in any other action.

The judgment of the court below will be affirmed.

HORTON, C. J.: I concur in the foregoing opinion, but as the question is one of very grave importance, I wish to add,

that while it is not to be denied there are numerous decisions of most respectable courts sustaining another rule, in my judgment the conflicting decisions are based upon insufficient and unsatisfactory reasons. The prior decisions of this court have settled the law in this state to be, that an officer's return of service on original process may be impeached in a direct proceeding *before* and *after* judgment, where the return states facts (as in this case) which do not come within the personal knowledge of the officer. *Bond v. Wilson,* 8 Kas. 229; *Chambers v. Bridge Manufactory,* 16 Kas. 270; *Hanson v. Wolcott,* (ante, p. 207.) The new question now involved is, whether this principle shall be applied in actions in the nature of ejectment, where the plaintiff seeks to sustain his title by a sheriff's deed based upon a judgment rendered by a justice of the peace on default, when there was in fact (notwithstanding the return of the officer) no service of summons, nor any waiver thereof. The ablest of the opinions, holding adverse views, concede they violate all principles of natural justice, but attempt to fortify their forced conclusions on the plea of public policy. Now, in this state, it is unnecessary for a plaintiff, in an action to recover the possession of real property, to allege how his estate or ownership is derived. All he need do is to state and prove he has a legal or equitable estate in the property sued for. Likewise, the defendant can plead or set forth his defense in as general terms. He need only deny generally the plaintiff's title; and without allegations or notice of fraud in the execution of the contract, deed, or conveyance, on which the plaintiff relies, the defendant may offer evidence under his answer, and surprise and successfully destroy the title. Even tax deeds, valid upon their face, may be attacked and impeached by evidence *aliunde,* without the pleadings pointing out any defect. In a word, under a general denial, we have already held, that in actions of this nature the defendant may show, by any legal evidence which he may have, that he is the owner of the land in controversy. *Hall's Heirs v. Dodge,* 18 Kas. 277. If our code has authorized, upon pleadings of such general terms, evidence of so broad a quality to be presented, I see no rea-

son to deny the right to impeach in this suit a judgment of the character that Bartlett obtained against Jane Hicks Brown before a justice of the peace in 1860. The fact that it is *prima facie* and presumptive evidence of its truth, is a sufficient advantage to the plaintiff resting upon it; and the party affected thereby, having no notice by the pleadings that it would be used to sustain any issue, would be, it seems to me, more greatly prejudiced by a denial of the right to controvert and disprove it, than the plaintiff would be if called upon to sustain the jurisdiction of the justice when that jurisdiction is attacked with the proof that Jane Hicks Brown was not within the state at the time of the pretended service. I see no valid reason for placing a defendant under this disadvantage against a judgment thus obtained. The fairness and the justice seem in favor of the right to impeach and annul the judgment.

Under the federal statutes, the plaintiff, being a citizen of another state, and the defendants citizens of Kansas, either party could have removed the suit before trial to the United States circuit court for this district. If the defendants had taken advantage of this statute authorizing such removals, under the decisions of the federal courts it seems to be settled that the pretended judgment could have been successfully impeached by the defendants in that court. *Thompson v. Whitman*, 18 Wall. 457; *Knowles v. Gaslight and Coke Co.*, 19 Wall. 58; *Earle v. McVeigh*, 1 Otto (U. S.) 503; *Shelton v. Tiffin*, 6 How. 163; *Webster v. Reid*, 11 How. 437; *Elliott v. Piersoll*, 1 Pet. 328. See also, *Pennoyer v. Neff*, Sup. Ct. of· U. S., Feb. 1878, 6 Cent. L. J. 252.

If we now hold that the defendants cannot obtain the same rights under our practice in our own courts, as in the federal courts held in the state, or if we remit the defendants to other modes of redress than awarded them in the district court, we deprive our own courts of some authority and power, and restrict their procedure upon grounds of policy unknown to federal practice. We would thus tend to swell the litigation in the federal courts, whose extensive and encroaching juris-

diction is already a subject of complaint with some of the profession, and is viewed by many as periling, not only the importance, but the existence of our state courts. In my view, not only do the principles of natural justice, but likewise the true principles of policy, considering the provisions of our civil code and the prior decisions of this court, sustain the opinion of my learned brother.

BREWER, J.: I dissent from the views expressed by my brethren in this case. I think that as to all domestic judgments, where upon the face of the record everything is regular, the judgment rendered upon legal and sufficient service, it is conclusive as against any collateral attack. Public policy requires that judicial proceedings apparently valid should be held valid as against everything but a direct attack. Under the rule laid down by the court, a solemn judgment of any court, even a court of record and of general jurisdiction, may be blown to pieces by the testimony of a single interested witness in an action in which the pleadings give no notice of any question of the validity of the judgment. In any direct attack, the party claiming rights based upon the judgment has specific notice, and may prepare his testimony accordingly. In this very case, if the plaintiff had specific notice of the objection to the validity of the judgment, he might perhaps have shown by many witnesses that the return of the constable was in fact true. My brother Valentine has fully referred to the authorities and arguments, and I simply desire to express my dissent to the conclusions reached by him and the Chief Justice.