W. H. AMSBAUGH V. EXCHANGE BANK OF MAQUOKETA, IOWA.

JUDGMENT, *Without Jurisdiction, Not Enforced in Another State.* A resident of a state left the same, intending never to return, and afterwards an action was commenced against him in such state, and the original process therein was served by delivering a copy thereof to his wife at the place where he and she had resided up to the time of his departure, and where she in fact was still living, and a personal judgment was rendered against him upon this service, and upon this service only. *Held,*

That such judgment was rendered without jurisdiction of the person of the defendant, and cannot be enforced by action or otherwise in another state.

### Error from Morris District Court.

THE opinion states the nature of the action, and the facts. At the April Term, 1884, the ,plaintiff bank, on the two causes of action stated in its petition, recovered a judgment against defendant *Amsbaugh* for $1,361.86 and costs. New trial denied. The defendant brings the case to this court.

*T. N. Sedgwick*, for plaintiff in error.

*Buck & Feighan*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This action was commenced in the district court of Morris county, by the Exchange bank of 'Maquoketa, Iowa, against W. H. Amsbaugh, of Dunlap, Kansas, to recover the amount of two certain judgments rendered against the defendant in the circuit court of Jackson county, Iowa. The defendant set up the defense that these judgments were rendered without any notice to him, without any appearance on his part, and, indeed, without any jurisdiction whatever as to him personally; and therefore he claims that said judgments are void. The case was tried by the court below without a jury, and the court made special findings of fact and conclusions of law, and rendered judgment in favor of the plaintiff and against the defendant for the amount of the judgments. The defendant brings the case to this court for review.

It appears from the special findings of fact that on November 4, 1878, and prior thereto, the defendant, with his wife, resided in the city of Maquoketa, in Jackson county, Iowa; that on that day he left the state of Iowa, intending to make Texas or Kansas his home and never to return to Iowa; and he finally, and on April 5, 1879, settled at Dunlap, Morris county, Kansas, and has never returned to Iowa. When he left Iowa, be left his wife residing in Maquoketa, in the same

house where they had formerly resided together prior to his departure; and she continued to reside until the spring of 1879, when she also left Iowa, intending never to return; and she immediately joined her husband in Kansas. When the defendant left Iowa on November 4, 1878, some of his household goods were already packed for shipment, and when his wife left they were all either sold or shipped. The actions in Iowa in which said judgments were rendered were commenced as follows: The first action was commenced on November 9, 1878, and the other was commenced on November 12, 1878. An "original notice" answering to a summons, was served in each action as hereinafter stated. The first notice was served on November 12, 1878, and the other was served on November 14, 1878; and the sheriff who served the same states in his return that he served them by delivering a copy thereof to the wife of the defendant at the defendant's "usual place of residence." A copy of each notice was in fact left by the sheriff with the defendant's wife, at the house where the defendant had resided up to November 4, 1878, and where the defendant's wife was still living; and the service was not made in any other manner. An attachment was also procured in each action at its commencement, upon the following ground, as stated by the plaintiff in his petition therefor: "And your petitioner further states, that said defendant has absconded, so that the ordinary process cannot be served upon him." The defendant never appeared in either of said actions, and never authorized any appearance for him; and no one did in fact appear for him, although the record of each judgment shows that counsel did appear for him. The defendant did not in fact have any knowledge or notice of the commencement or existence of either action until long after the judgments therein were rendered against him.

The question now arises, are these judgments such *personal* judgments against the defendant that they may be enforced against him personally by an ordinary action upon them outside of the jurisdiction in which they were rendered, and in Kansas? Several days prior to the commencement of these

actions, the defendant had passed outside of and beyond the jurisdiction of the state of Iowa, where these judgments were rendered, and has never since returned within such jurisdiction, and has never since voluntarily or otherwise surrendered jurisdiction to the state of Iowa of either his person or his property by any appearance in the courts of Iowa, or otherwise. This it would seem ought to be decisive of any question involved in this case; for a judgment rendered without jurisdiction is everywhere held to be void. But it is claimed that the defendant still had a residence within the state of Iowa, and within the jurisdiction of the court which rendered the foregoing judgments when the aforesaid notices were served, and that they were served in accordance with the laws of Iowa, so as to obtain jurisdiction of his person, by delivering copies thereof to his wife at such residence. They were not served upon him personally, however, nor served while he was within the jurisdiction of the court or within the jurisdiction of the state; and service at his residence, or otherwise, unless it can be held to be a service upon him *personally,* cannot bind him *personally,* (*Mitchell v. Gray,* 17 Ind. 123; *Sallee v. Hays,* 3 Mo. 116;) and service merely upon his wife is not sufficient. (*Moore v. Wade,* 8 Kas. 380.)

It is admitted that the service was made by delivering copies to the defendant's wife; but it is denied by the defendant that the place where the notices were served, and where he had formerly lived, was at the time of the service his "usual place of residence," or his place of residence at all. We suppose that a resident of a state, intending to leave it permanently, will nevertheless continue to be a resident of the state, at least for some purposes, until he passes beyond the boundaries of the state; (*Ballinger v. Lantier,* 15 Kas. 608;) though it is held in Virginia that such a person would become a non-resident of the state as soon as he started to remove therefrom. (*Clark v. Ward,* 12 Gratt. 440.) And in Iowa it is held that a resident of a state intending to remove from one county therein to another county therein, would become a non-resident of the state as soon as he passed from the

county of his residence into an intervening county, and before he had reached the county in which he intended to make his future residence, although at no time had he passed beyond the boundaries of the state. (*Cohen v. Daniels*, 25 Iowa, 88.) And certainly after a resident of a state intending to remove therefrom has passed beyond the boundaries of his state, he is no longer a resident of the state, but is a non-resident thereof. (*Ritter v. Phœnix Mutual Life Ins. Co.*, 32 Kas. 504.) And a service of a notice at a person's former place of residence after he has removed therefrom is not service at his "usual place of residence." (*Mastin v. Gray*, 19 Kas. 458.)

But it is claimed by the plaintiff that the defendant's wife still resided in Iowa when these notices were served, and therefore that his residence must be deemed to have been there also. Now a wife's residence or domicile never controls or fixes her husband's residence or domicile; but, on the contrary, her residence or domicile generally follows that of her husband. (*Davis v. Davis*, 30 Ill. 180; *Cambridge v. Charlestown*, 13 Mass. 501; *Greene v. Greene*, 28 id. 410; *Hackettstown Bank v. Mitchell*, 28 N. J. L. 516; *Pearce v. The State*, 1 Sneed, 63; *McAfee v. Kentucky University*, 7 Bush, 135; *Hart v. Horn*, 4 Kas. 232.) The husband's residence is where he himself resides, and not necessarily where his wife resides, or where he does not in fact reside. (See authorities last cited.)

But probably neither the residence of the husband nor that of the wife could be so controlled by the place of residence of the other that a good service of summons could be made upon one of them by leaving a copy of the summons at the place of residence of the other, when the one intended to be served did not in fact reside at such place. A husband and wife may in fact have different places of residence, or one or both may in fact not have any such actual and particular place of residence as would authorize the service of a summons upon him or her at such place of residence, without any actual delivery of the summons, or a copy thereof, to the party intended to be served; and whatever may be the rule with respect to domicile, a person may, and often does, lose one

place of residence before he actually procures another. (*Cohen v. Daniels*, 25 Iowa, 88, 90; *Clark v. Ward*, 12 Gratt. 440; *Exeter v. Brighton*, 15 Me. 58; *Colton v. Longmeadow*, 94 Mass. 598.)

But would the service of the notices in this case be sufficient as a *personal* service upon the defendant, even if the house in Iowa, where he formerly resided, were still his "usual place of residence"? Would the service be such a *personal* service upon him that it would bind him *personally* in other jurisdictions outside of the state of Iowa? How could such a service reach over into Kansas and affect the party or his property in Kansas? A state may have complete power and jurisdiction over all persons and things within its boundaries, but it cannot reach beyond its boundaries, and into other jurisdictions, and there affect the status of persons or things. Neither the laws of a state, nor the jurisdiction thereof, nor any of its judicial processes, can reach beyond its boundaries or have any extra-territorial force or operation. And the judicial determinations of a state can have force and operation in another state, only so far as the court promulgating such determinations has jurisdiction over the persons or things to be affected by such determinations. Any determination without jurisdiction is void; and any determination in excess of jurisdiction is also void to the extent of the excess; and a judgment rendered in one state without jurisdiction, or in excess of jurisdiction, may be impeached collaterally, or otherwise, in another state, and upon extrinsic evidence, as well as upon the record of the judgment. (*Litowich v. Litowich*, 19 Kas. 451, 455; *Mastin v. Gray*, 19 id. 458, 562; *Brinkman v. Shaffer*, 23 id. 528; *McNeill v. Edie*, 24 id. 108. See also *Earle v. McVeigh*, 91 U. S. 503; *Windsor v. McVeigh*, 93 id. 274; *Hart v. Sansom*, 110 id. 152; same case, 29 Albany L. J. 152.) In this state a domestic judgment may be impeached for want of jurisdiction, collaterally as well as directly, and by extrinsic evidence as well as intrinsic evidence. (*Mastin v. Gray*, 19 Kas. 458.) In this particular case some of the evidence is extrinsic and some of it is intrinsic; some of it is by the record, and some of it

*dehors* the record. The records of the judgments sued on in this case, as well as other evidence, tend to show that the place where the notices were served was not the defendant's "usual place of residence;" for under the laws of Iowa, "ordinary process" "*may be served at the defendant's usual place of residence*," while the plaintiff's petition set forth as a ground for his attachment that the defendant had absconded so that the "ordinary process" could not be served upon him. The defendant in fact had no "usual place of residence" in Iowa, when the foregoing notices were served, and the court rendering the aforesaid judgments had no jurisdiction to bind the defendant *personally* by such judgments. The judgments may have been sufficient to dispose of the property attached in Iowa, for such property was within the territorial jurisdiction of the court rendering the judgments; but the judgments are not sufficient upon which to found any action in Kansas, for the court rendering the judgments did not have jurisdiction of any person or thing now in Kansas.

The judgment of the court below will be reversed, and the cause remanded with the order that judgment be rendered in favor of the defendant below, and against the plaintiff below.

All the Justices concurring.