Shields v. Miller.

DAVID P. SHIELDS V. JOHN S. MILLER, et al.

1. SHERIFF'S DEED Prima facie Evidence. A sheriff's deed is of itself prima facie evidence that the grantee holds all the title and interest in the land that was held by the judgment-debtor at the time of the rendition of the judgment, or at any time thereafter up to the sale of the premises; and is prima facie evidence of the validity of the judgment itself.

2. CONSTRUCTIVE SERVICE; Publication Notice; Jurisdiction. In an action to foreclose a mortgage on real estate, service may be made upon a defendant not residing within the state, by publication; but before such service can be made, an affidavit must be filed showing that service cannot be made personally on the defendant within the state. And where a service by publication has been made, in such a case, without said affidavit being first filed, the service is void; and every subsequent proceeding in the case founded on such service, including the judgment, the execution or order of sale, the sale, and the sheriff's deed, must also necessarily be void.

*Error from Bourbon District Court.*

EJECTMENT, brought by *Shields* against *Miller, Pratel,* and *Rogers,* to recover possession of 160 acres of land in Bourbon county. The case was tried at the December Term 1870, and a new trial granted under the statute. A second trial was had at the June Term 1871. *Shields* gave in evidence two patents issued to Charles P. Bullock, one dated June 1, 1861, the other dated July 10, 1861, and a quitclaim deed from said Bullock, and Rowena his wife, to himself, (*Shields,*) dated February 5th, 1870, for said lands, and rested. Defendants then gave in evidence, over plaintiff's objection, a sheriff's deed, dated November 17, 1865, executed by the sheriff of Bourbon to and in favor of *John S. Miller,* reciting the recovery of a judgment in the Bourbon district court March 30th, 1863, by one Benj. L. Riggins against Charles P. Bullock and Rowena Bullock his wife, in an action to foreclose a mortgage given by said Bullocks on the lands now in controversy, and a decree therein that said mortgaged premises be sold to satisfy said judgment, etc., a sale under said judgment and decree, the purchase of the said premises by *Miller,* etc. Said sheriff's deed was duly executed,

acknowledged and recorded, and purported to "give, grant, and convey to the said John S. Miller, his heirs and assigns, the aforesaid lands and tenements," etc. *Miller* had sold and conveyed to his co-defendants a certain portion of the lands in controversy. *Miller* testified that he obtained possession of said premises in 1862, from one James Myers, (who claimed title from Bullock,) and that he had been in possession thereof ever since, except such portions as he had sold. Plaintiff in rebuttal gave in evidence the record of the foreclosure action of "Riggins v. Bullock and Bullock." The body of the affidavit therein to obtain service by publication, is as follows:

[TITLE, AND VENUE.] "Andrew Ellison, attorney for plaintiff in the above case, being first duly sworn deposeth and saith, that on the said 18th of July 1862 the said Benj. L. Riggins filed a petition against said Charles P. Bullock and Rowena Bullock, defendants, praying that certain lands situate in said county may be decreed to be sold to satisfy a mortgage given by the said Charles P. Bullock and Rowena Bullock to said Benj. L. Riggins, and a note given by said Charles P. Bullock to said Riggins, to secure the payment of a certain sum of money in said note and mortgage mentioned; and the said Andrew Ellison, as attorney and agent for said Riggins, further saith that said Charles P. Bullock and Rowena Bullock have removed from the State of Kansas, and now live in the State of Missouri, as said Andrew Ellison verily believes, and are nonresidents of the State of Kansas, and that the service of a summons on the said Charles P. Bullock and Rowena Bullock ———— within the State of Kansas; and that the said plaintiff, Benj. L. Riggins, wishes to obtain a service on the said Charles P. Bullock and Rowena Bullock by publication; and further saith not."

Said record shows that said action was heard at "the Spring Term 1863;" that the court found that defendants therein were "duly served by publication;" that a judgment was rendered in favor of Riggins and against Charles P. Bullock, on the 30th of March, 1863, for $588.88, and a decree of foreclosure and sale against said Bullock and wife; that an order of sale was issued February 24th 1864; that the mortgaged premises were sold pursuant to said order April 24th

1864, to one Kent, who failed to pay; that an *alias* order of sale was issued June 7th 1865, upon which the mortgaged premises were duly advertised and were sold July 29th 1865, to said *Miller*, for $1,000; that said sale was confirmed by the the court, and a deed ordered to be made to the purchaser, (*Miller*.) The plaintiff, *Shields*, asked the following instructions, which were refused:

"1st. The plaintiff asks the court to instruct the jury, that the judgment in the case of Benj. L. Riggins v. Charles P. Bullock and Rowena Bullock is void for want of jurisdiction.

"2d. That the sheriff's deed offered in evidence in this case is void, and conveys no title to the said Miller."

The court in its general charge gave the following instruction:

"8th. It becomes necessary for the court to find whether the judgment in the case of Riggins v. Bullock at the March Term of this court 1863 was a good and valid judgment, the same being the foundation for the sheriff's deed introduced in this case by the defendants, and under which they claim rights and interests in the lands in controversy adverse to the plaintiff. * * * It was necessary in order to obtain jurisdiction in that case, that due service upon said defendants, either actual or constructive, should be had, in substantial compliance with the laws of this state. Was such a service had? The first step necessary and imperative to make constructive service was the filing of an affidavit in the office of the clerk of this court, averring in effect that service of summons could not be made within this state on the defendants to be served, and that said defendants were then nonresidents of this state, or some one of the other statutory reasons, given in § 78 of the civil code of 1859. Was such an affidavit filed? The court is clearly of the opinion that such was the case. It is true that § 79 of said code says that 'Before service can be made by publication, an affidavit must be filed that service of summons cannot be made within this territory,' etc.; but the court must conclude that the necessity of following the exact wording of said section, in view especially of the amendment of § 60, providing for the service of summons, made February 25th 1860, (Comp. Laws, 233, § 1,) which provides that "Every other action must be

brought in the county in which the defendants or some of the defendants *reside,*" did not exist. The necessity therefore of a strict compliance with said § 79, in words and letter, cannot be with fair reason urged. If the affidavit therefore shows that the defendants were *nonresidents* of the state at the time of the making thereof, it would necessarily carry with it the further fact that no service at all could be made upon either of the defendants within this state by force of the law, for the defendants could not have been served with process within this county or state, (not *residing* here,) though they might have been found here. It was therefore the fact, and substantially so averred in the affidavit for publication, that said defendants could not be served within this state. It was therefore a sufficient affidavit for publication to procure a constructive service. The court therefore having had jurisdiction at the time of rendering the judgment, said judgment must stand as the judgment of this court until reversed by proceedings had for that purpose. And the court instructs the jury that the sheriff's deed offered in evidence by defendants gave the purchaser, Miller, all the right, title and interest of said Charles P. Bullock in and to the land in controversy," etc. * * * "And the jury will find for the defendants."

The jury returned a verdict for the defendants, and a new trial being refused *Shields* brings the case here on error.

*McComas & McKeighan,* for plaintiff in error:

1. The district court erred in admitting the sheriff's deed without the defendants showing first a valid judgment, execution, and sale. The learned judge who presided at this trial was of the opinion that a sheriff's deed is *prima facie* evidence of title, and is good until something to the contrary is shown, and cited counsel to Comp. Laws of 1862, (under which the sale was made) page 119, § 450. This section, among other things, provides "the deed shall be sufficient evidence of the legality of *such sale,* and the proceedings *therein.*" The words "proceedings therein" refer to the "sale" and not to the judgment. This section further provides that the deed shall convey all the interest in the premises which the defendant had at the time of the "judgment," but if the court below was right, it was not necessary

to show that there was any judgment. A sheriff's deed is no evidence in an action of ejectment, where the suit is not between the parties to the original action, without first showing a valid judgment, execution and sale. 2 Greenl., § 316; Tyler on Ejectment, 529; 4 Chand., 12; 6 M. & S., 110.

2. The court below erred in its charge to the jury. We invite the attention of the court to instruction No. 8. We can make no synopsis of this instruction, but ask the court to read it. But we think it bad law, an attempt to get over the question. We claim that the record in this case shows that the court which rendered the judgment had no jurisdiction of the defendant, and all the proceedings are *coram non judice.* There are three classes of decisions upon this question of jurisdiction: 1st. Where the record affirmatively shows that the court had jurisdiction of the subject-matter, and the person of the defendant. In this class of cases, the decisions, with but very few exceptions, sustain the doctrine that the record cannot be contradicted, and that no errors afterwards committed by the court can be inquired into in a collateral proceeding. 2d. Where the record affirmatively shows that the court had no jurisdiction of the subject-matter of the suit, or the person of the defendant. In this class of cases, the decisions are equally unanimous in holding that any judgment rendered by the court is void—a void thing is no thing—cannot be enforced under any circumstances, and will be treated as nothing, even in collateral proceedings. 3d. Where the record is silent upon the jurisdictional facts. It is this class of cases that has elicited so much judicial discussion, and upon which there are so many contradictory decisions.

We say this case belongs to the second class of cases, and that the record affirmatively shows that the court which rendered the judgment in the case of Riggins v. Bullock had no jurisdiction of the defendant. What is the record? The proceedings in the case, petition, affidavit for publication, journal entries and judgment. In this case the record recites that the defendant " was duly served by publication," (which

may mean that notice was published in the paper the proper length of time;) but the affidavit on which this publication was made does not state facts which authorize a service to be made by publication. Code of 1859, §§ 78, 79. These sections require three things to be done before there can be service by publication. If we can dispense with a part of what the statute requires, we may with all. We may go behind the recital in the judgment, that there has been due and proper service by publication, and show by the record that the defendants were not before the court; that the law did not authorize a service by publication. Under the statute the affidavit must show, 1st, that the cause of action is one mentioned in § 58 of the code; 2d, that the defendants are nonresidents; and 3d, that service of summons cannot be had upon them *in this state*. But this affidavit (which is a part of the record) fails to state that personal service cannot be had upon the defendant in this state. Now if the plaintiff in the case of Riggins v. Bullock had omitted to comply with the first requirement, (that his case was one in which the law authorized service by publication,) the case would be within the principle decided in *Hollingsworth v. Barbour*, 4 Peters, 466. (And see 10 Iowa, 304; 4 Mon., 541.) But what difference does it make whether he omits to do this, or omits to do something else which the statute requires him to do? The statute prescribes in what cases, and how service may be made by publication. Will the court prescribe a different mode, or say it is not necessary to do what the statute says must be done?

The filing of a proper affidavit is the first jurisdictional step where it is sought to bring the defendant before the court by publication. It is not the publication alone that confers jurisdiction, but the filing of an affidavit showing a case in which publication may be legally made, *and* the publication. The affidavit can no more be dispensed with than the notice in the paper. In this case the record affirmatively shows that no such affidavit was filed, and that the court had no jurisdiction of the person of the defendant by reason of

this pretended publication. Sustaining this view of the case, see 13 Wis., 569; 11 Wend., 648; 4 G. Greene, 465; 32 Barb., 604; 56 Penn. St., 176; 27 Ind., 253; 14 Mich., 532; 10 Minn., 366; 2 Doug., 498; 2 Kas., 240; 30 Cal., 610; 31 id., 342. We are aware that there is a recent California case which holds that the affidavit for publication is no part of the record, (34 Cal., 891;) but said case is decided on particular statute prescribing what shall be considered "the record," or "judgment roll," as it is called in the code of California. But our code, in force when said proceedings were had, (Comp. Laws, 189, § 402,) makes the affidavit a part of the record. The judgment in that case being void, the sheriff's deed to Miller was necessarily void, and the judgment in this case ought to be reversed.

[No brief, and no appearance, for defendants in error.]

The opinion of the court was delivered by

VALENTINE, J.: This was an action for the recovery of real property. Charles P. Bullock was the original owner of the land in controversy, the common source of title of both the plaintiff and the defendants. The plaintiff claims title to the land under a quitclaim deed from Bullock to himself, dated February 5th 1870. The defendants claim title under a sheriff's deed executed November 17th, 1865, in pursuance of a judgment, execution, etc., against Bullock. And the whole controversy in this case, so far as it is now presented, depends upon the validity of said sheriff's deed.

The sheriff's deed was introduced in evidence prior to any evidence being introduced to prove the existence of any judgment, execution, or sale. This was not erroneous. The statute of this state concerning sheriff's deeds, and sheriff's sales, provides that "The deed shall be sufficient evidence of the legality of such sale, and the proceedings therein, until the contrary be proved, and shall vest in the purchaser as good and as perfect an estate in the premises therein mentioned as was vested in the party, at or after the time when

such lands and tenements became liable to the satisfaction of the judgment." (Civil code, Comp. Laws, 200, § 450; Gen. Stat., 717, § 459.) The sheriff's deed proves *prima facie* under said statute that the sale under which it was made was legal. This it could not do, unless it also proved *prima facie* that the judgment and execution under which the sale was made were also valid. A judgment cannot be void, and the sale made under it legal and valid. If the judgment is illegal and void the sale must also necessarily be illegal and void. A sheriff's deed is therefore of itself *prima facie* evidence that the grantee holds all the title and interest in the land that was held by the judgment-debtor at the time of the rendition of the judgment, or at any time thereafter up to the time of the sale of the premises; and it is *prima facie* evidence of the validity of the judgment itself. After the sheriff's deed was introduced in evidence the plaintiff introduced the record of the case in which the deed was executed to show that the deed, and all the proceedings upon which it was founded, were void. The foundation of the deed was an action to foreclose a mortgage on the land in controversy. The service of the summons in said action was by publication in a newspaper. The defendant was never personally served, and he never made any appearance in the case. The plaintiff in this case claims that the service by publication was void, and therefore that the court never obtained any jurisdiction of the defendant in the foreclosure case, and therefore that the judgment in that case, and all proceedings under it, including the sheriff's deed, were void. This kind of action, (that is, an action to foreclose a mortgage on real estate,) must be commenced in the county in which the land is situated: Civil code, Comp. Laws, 132, § 52; Gen. Stat., 638, § 46. But a summons may be issued to any county in the state, and there be personally served upon the defendant: Comp. Laws, 134, § 66; Gen. Stat., 641, § 60. Where the defendant is a nonresident of the state, service may be made upon him by publication in a newspaper: Comp. Laws, 136, § 78; Gen. Stat., 642, § 72. But "Before service can be made by publication,

an affidavit must be filed, that service of a summons cannot be made within this state, on the defendant or defendants, to be served by publication. * * * When such affidavit is filed, the party may proceed to make service by publication." Comp. Laws, 136, § 79; Gen. Stat., 643, § 73. At the time this foreclosure suit was commenced the defendant Bullock was a nonresident of the state, having prior thereto gone from this state to the state of Missouri. But no affidavit was made or filed in the case showing that service of a summons could not be made personally upon him within this state. For this reason it is claimed that all the proceedings, including the sheriff's deed, were void. There was an affidavit made and filed in said case for the purpose of obtaining service by publication; but from anything that appears in said affidavit the defendant may have been in Bourbon county, or even on the land in controversy, when this affidavit was filed, and might therefore have easily been served with a summons in this state. This defect in the affidavit we think is fatal. The law is explicit and peremptory, and there is no way of evading it. The affidavit is the foundation upon which jurisdiction is obtained. The plaintiff has no authority or power to obtain service by publication until after he has filed the proper affidavit. Without the affidavit the attempted service by publication is a nullity. And without a valid service, every subsequent proceeding, including the judgment, the execution, or order of sale, the sale, and the deed, must necessarily be void. Section 60 of the civil code of 1859, as amended in 1860 (Comp. Laws, 133, § 60; id., 233, § 1,) has no application to this foreclosure case. The court below seems to have supposed otherwise: (see instruction No. 8.) This case was an action "for the sale of real property under a mortgage," as mentioned in § 52 of said code, and was not the "other action" mentioned in said § 60 of the code. The court below instructed the jury in the case at bar that they must find for the defendants. This was error. The judgment must therefore be reversed and cause remanded for a new trial.

All the Justices concurring.