J. B. LARIMER *et al.* v. SARAH ANN KNOYLE.

1. SUMMONS — *Service by Publication.* It is not necessary in any case that the clerk of the district court should issue a summons where service of summons is made by publication.

2. DIVORCE — *Unknown Residence of Defendant — Filing Affidavit.* In a divorce case where an affidavit is filed stating that the residence of the defendant is unknown to the plaintiff, and cannot be ascertained by any means within the control of the plaintiff, and such affidavit is filed in lieu of sending a copy of the petition and a copy of the publication notice to the defendant, it is not necessary that the affidavit should be filed within three days next after the date of the first publication.

3. S. FEE, J. P. — *Presumption.* And after judgment in such a case, where it appears in another action and in another court that such affidavit was sworn to in the county where the divorce proceedings were pending before "S. Fee, J. P.," it will be presumed that "S. Fee, J. P.," was a man by the name of S. Fee, who was a justice of the peace of such county.

4. PROCEEDINGS, *False — Judgment, Not Void.* And in such a case where service of summons is made by publication in a newspaper, and after judgment it appears in another action and in another court that the petition in the divorce case, and the affidavit for service by publication, and the affidavit filed in lieu of sending a copy of the petition and publication notice to the defendant, were and are all untrue and false, such facts will not render the judgment rendered in the divorce case absolutely void.

5. FACTS, STATED — *Divorce Judgment, Not Defeated.* More than two years after the time when judgment in the divorce case was rendered, the defendant in the divorce case, in another action and in another court, in order to defeat and avoid such judgment, filed a pleading setting forth and alleging the falsity of the petition, and of the affidavit for service by publication, and of the affidavit filed in lieu of sending a copy of the petition and publication notice to the defendant, and the fraud of the plaintiff in procuring the decree of divorce, but did not set forth or allege in the pleading that the defendant did

not have actual notice of the pendency of the divorce proceedings within time to appear in court and make defense thereto, nor that such defendant did not have knowledge of the fraud perpetrated by the plaintiff in procuring the divorce until within less than two years next preceding the filing of such pleading. *Held*, That the pleading does not state facts sufficient to authorize the defendant to defeat or avoid the divorce judgment.

*Error from Shawnee District Court.*

JUDGMENT for plaintiff *Knoyle*, at the January term, 1888. The facts are substantially stated in the opinion.

*J. B. Larimer*, and. *John W. Day*, for plaintiffs in error.
*Elliott & Bradley*, for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought in the district court of Shawnee county, by Sarah Ann Knoyle against J. B. Larimer and others, to set aside a certain will of Jeremiah Knoyle, deceased, and to have the estate purporting to be disposed of by the will declared to belong to the plaintiff, who, she alleges, is the widow and sole surviving heir of the deceased; but the question finally decided by the court below, and the one brought to this court, is, whether a certain decree of divorce purporting to divorce the aforesaid Jeremiah Knoyle from the aforesaid Sarah Ann Knoyle is void or not for want of jurisdiction in the court rendering it, or for fraud on the part of Knoyle in procuring it. A full set of pleadings was filed in the case, a petition, an answer, a reply and a demurrer by the defendants, to the second paragraph of the reply. The demurrer was overruled by the court below, and the defendants, as plaintiffs in error, bring the case to this court for the purpose of having such ruling reviewed and reversed.

The facts of the case, admitted by the pleadings, appear to be substantially as follows: On October 16, 1860, the aforesaid Jeremiah Knoyle and Sarah Ann Knoyle were married. She at the time had about $2,000 in money and personal property, which he obtained from her and used. They lived

together as husband and wife up to about February 24, 1884, and during the time by their joint efforts they accumulated a large amount of property. From about the year 1869 until his death, which took place on May 1, 1887, they resided in Kansas, and she has resided here since except as hereafter stated. Prior to February 24, 1884, he sent her out of the state of Kansas to visit friends in other states, where she remained until after his death, which took place as before stated on May 1, 1887. On September 1, 1884, he paid to her $1,700 and took a receipt therefor, which shows on its face that the amount was paid in discharge of all claims by her against him and his estate; but she alleges in her reply that the receipt was procured from her fraudulently, she believing at the time that it was intended to be nothing more than merely a receipt for $1,700. On February 24, 1885, Knoyle, by his counsel, drew up a petition for a divorce from his wife upon the ground of willful absence from him and abandonment of him for a period of more than one year. On the same day he verified his petition by stating upon oath that the allegations therein contained were true. Also on the same day, February 24, 1885, he made another affidavit, which was for service of summons by publication, in which he stated, among other things, that Sarah Ann Knoyle, the defendant in that action, was a non-resident of the state of Kansas, and that service of summons could not be made upon her within the state. On February 26, 1885, he filed all these papers in the district court of Pottawatomie county, in which county he resided, and on the next day, February 27, 1885, he commenced to procure service of summons by publication by having a proper notice of the action published in a newspaper of the city of Wamego, in said county — the first publication being on that day. This publication was continued in each issue of the newspaper for four consecutive weeks. The answer-day was to be on or before April 11, 1885. On February 28, 1885, Knoyle made another affidavit, in which he stated that the residence of Sarah Ann Knoyle, the defendant in that action, was unknown to him, and that he could not

ascertain the same by any means within his control.   This
affidavit was filed in the district court of Pottawatomie county
on March 3, 1885.   On June 13, 1885, the aforesaid decree
of divorce was granted to Knoyle, Sarah Ann Knoyle never
having made any appearance in the case.   On July 24, 1886,
Knoyle executed a will, giving all his property, real and per-
sonal, to others than Sarah Ann Knoyle, and appointing J.
B. Larimer as his executor.   On May 1, 1887, Knoyle died,
leaving no children or offspring, nor any wife unless Sarah
Ann Knoyle was still his wife.   Afterward the aforesaid will
was duly probated, and J. B. Larimer, who is the executor
under it, and one of the defendants in this action, is now in
the possession of all the estate of the deceased testator.   This
action, which was brought to set aside said will, etc., was com-
menced on June 2, 1887.   On July 14, 1887, Larimer an-
swered, setting up among other things the aforesaid decree
of divorce, and alleging that because of such divorce, the
plaintiff, Mrs. Knoyle, was not the wife of Knoyle at the
time of his death, and could not, under the laws of Kansas,
and the laws of descents and distributions, take any interest
in her former husband's estate.   On August 24, 1887, the
plaintiff replied, setting forth in the second paragraph of her
reply, as follows:

"2. And for a further and additional reply to said answer,
the plaintiff says: That when she, the said plaintiff, was mar-
ried to said Jeremiah Knoyle, now deceased, she owned in her
own right a large amount of money and personal property,
aggregating in value about $2,000, and she at that time gave
it into the possession of said Jeremiah Knoyle, and that he
invested the same in real estate in his own name and used the
same as his own money, and never refunded any portion of
it to plaintiff, or in any manner paid it or any part of it to
her; and that she continued to live with him for a period of
about 24 years as his wife, and toiled and drudged for him,
and by her work and economy and toil assisted him to accu-
mulate all the property of which he died possessed; that dur-
ing the entire period of her married life she continued to be
a loyal, devoted, and obedient wife to said Jeremiah Knoyle;
that sometime in 1878, and when she was far advanced in

years, the said Jeremiah Knoyle, by the careless and reckless driving of a team, injured her, the plaintiff, so severely that she became a cripple for life; that when he realized she was so hopelessly crippled that she could toil and drudge for him no more, he cruelly determined to rid himself of her, to get divorced from her, and without her knowledge and consent; and sometime prior to February 24, 1884, he, said Jeremiah Knoyle, sent the plaintiff away to visit her relatives, with the understanding that she was to visit and rest with her relatives in the states of Wisconsin, Michigan, and Pennsylvania; that while she was away on said visit he knew all the time and every day where she was, and was continually corresponding with her and her relatives with whom she was visiting, during all of said time. And while she was so visiting, he, said Jeremiah Knoyle, gave her the $1,700 mentioned in the exhibit attached to plaintiff's answer, and by representing to her that said writing was only a receipt, induced her to sign the said paper copied in said answer, and she, relying upon his representations and good faith, and believing that it was intended only as a receipt for that money, signed said paper. And afterward the said Jeremiah Knoyle, fraudulently designing to obtain a divorce from said plaintiff, and without her knowledge and consent, did, on the 26th day of February, 1885, file a false petition against her for a divorce, falsely charging her with abandoning him, in the office of the clerk of the district court of Pottawatomie county, Kansas. And the plaintiff says the said charge of abandonment was wholly false; that he never made or caused to be made any legal service of summons, either personal or constructive, or by publication or otherwise, in said cause. He caused a notice of said divorce proceedings to be published in the Kansas *Reporter*, a newspaper published in the city of Wamego, in said Pottawatomie county, but he, said Jeremiah Knoyle, notwithstanding he well knew all the time where said Sarah Ann Knoyle was, and what her postoffice address was, never sent her any notice of said divorce, and never at any time inclosed a copy of his said petition for divorce with a copy of said publication notice attached thereto, in an envelope addressed to said Sarah Ann Knoyle at her place of residence, postage prepaid, or otherwise, and never deposited the same in the nearest postoffice or in any postoffice, and never sent the same, and never attempted to send it to the said Sarah Ann Knoyle, but he, said Jeremiah Knoyle, falsely, fraudulently, and wrongfully, did, on the 28th day of February, 1885, make

and file an affidavit in said district court of Pottawatomie county, stating in substance that the residence of the said Sarah Ann Knoyle was then unknown to him, and the same could not be ascertained by any means within his control; and the plaintiff avers that said Jeremiah Knoyle well knew where her place of residence was on the said 28th day of February, 1885. A complete transcript of the records of the court in said pretended divorce proceedings is hereto attached and made a part of this reply, marked 'Exhibit A.' And plaintiff says that there was no other service, or pretended or attempted service of summons, either personally, constructively, or otherwise, except as hereinbefore stated, in said pretended divorce proceedings; and the plaintiff never waived any service of summons in said case, and never in any manner entered her appearance therein; and that the said pretended service of summons was null and void; that the said pretended judgment of said Pottawatomie county district court in said pretended divorce case was wholly void; that said district court never obtained and never had jurisdiction in said pretended action of divorce, and that all said proceedings in said pretended action were null and void."

Larimer filed a demurrer to this second paragraph of the plaintiff's reply, upon the following grounds, to wit:

"1. The second ground of reply contained in plaintiff's reply to the separate answer of the defendant is not sufficient in law.

"2. The second ground of reply contained in plaintiff's reply to the defense set forth and contained in the separate answer of defendant, is upon its face insufficient in law.

"3. It appears upon the face of the reply that the facts set forth in the second ground of said reply to the defense set forth and contained in the separate answer to the defendant, J. B. Larimer, are insufficient in law to constitute a traverse or avoidance of said defense."

The court below overruled this demurrer, and the defendants, as plaintiffs in error, bring the case to this court for review. Since this case was brought to this court Sarah Ann Knoyle died, and on July 3, 1889, the case was revived against James M. Foster as executor of her last will and testament, and the case is now prosecuted as against him.

It would seem from the pleadings of the parties as they

now stand, that Mrs. Knoyle never abandoned her husband, Jeremiah Knoyle, and in this respect his petition for the divorce is untrue and false; that she all the time during the pendency of the divorce proceedings, and prior and subsequent thereto, was a resident of Kansas, and in that respect the affidavit for service by publication was untrue and false; and she was not only a resident of Kansas, but her absence from the state during the pendency of such divorce proceedings was not with any intent to avoid the service of summons, and therefore service of summons could not legally have been made at all upon her by publication for the purpose of procuring a divorce. (Civil Code, § 72.) And the plaintiff in the divorce case all the time well knew where she was and where she received her mail, so that he could have sent a copy of the petition in the divorce case and a copy of the publication notice to her; and in this respect his second affidavit also is substantially untrue and false.    The defendant's pleadings, however, are to some extent defective.    She does not state where in fact she was during the pendency of the divorce proceedings; nor does she state that she did not have during all that time full knowledge of the pendency of such proceedings; and from anything stated in her pleadings, she may have had full knowledge of the pendency of all the divorce proceedings during all the time while they were taking place, and also full knowledge of the judgment in the divorce case when it was rendered; and full knowledge of all the alleged frauds connected with these divorce proceedings at the time they were occurring.

It is well settled in this state that a judgment rendered without jurisdiction is void, absolutely and entirely, and may be shown to be void in a collateral as well as in a direct proceeding, and by extrinsic evidence as well as by the record itself, and a judgment rendered against a party who has not been served in any manner with summons or notice, and who has not made any appearance in the case, is a judgment rendered without jurisdiction. (*Mastin v. Gray,* 19 Kas. 458; *Litowich v. Litowich,* 19 id. 451; *Amsbaugh v. Exchange Bank,* 33 id.

100; *Thorn v. Salmonson*, 37 id. 441.) But a judgment rendered with jurisdiction is not void but at most only voidable, and can be impeached or overturned only in a direct proceeding instituted for that purpose, although it may be ever so irregular or defective and founded upon service or process ever so irregular or defective, provided of course that in all cases the judgment, the service and the process are not so irregular or defective as to absolutely destroy the jurisdiction of the court. (*Armstrong v. Grant*, 7 Kas. 285; *Ogden v. Walters*, 12 id. 282; *Simpson v. Kimberlin*, 12 id. 580; *Pierce v. Butters*, 21 id. 124; *Rowe v. Palmer*, 29 id. 337.) In this case it is claimed that the service of summons in the divorce case was and is absolutely void, and therefore that the judgment in such case was and is absolutely void, for the following reasons:

I. No summons was issued by the clerk of the court in the divorce case. This question has already been disposed of by this court in the case of *Bannister v. Carroll*, ante, p. 64; same case, 22 Pac. Rep. 1012. It is true that no summons was issued in the divorce case, but where service of summons is made by publication it is not necessary that an ordinary summons should be issued. See case above cited.

II. In a divorce case where service of summons is procured by publication it is necessary also that a copy of the petition, with a copy of the publication notice attached thereto, should be sent to the defendant within three days after the date of the first publication, "unless the plaintiff shall make and file an affidavit that such residence is unknown to the plaintiff and cannot be ascertained by any means within the control of the plaintiff." The plaintiff in the divorce case did not send any copy of the petition or of the publication notice to the defendant, but in lieu thereof filed an affidavit which seems to be sufficient on its face, but it was not filed within three days after the first publication was made, but was filed on the fourth day thereafter, and for that reason it is claimed that the service by publication was and is void. Now the statute does not require that the affidavit should be filed within three

days after the first publication is made; and we do not think that it is necessary that it should be filed within that time. Indeed, the plaintiff in the case might not feel that he was able to make the necessary affidavit until after the three days had expired. He might in fact believe up to the end of the third day that before the three days should expire he could ascertain where the residence or postoffice address of the defendant was.

III. The aforesaid affidavit was sworn to in Pottawatomie county before "S. Fee, J. P.," and there is nothing further to show who "S. Fee, J. P.," was; and for that reason it is claimed that the affidavit was void, and therefore that the service was void. We shall presume, however, that "S. Fee, J. P.," was a man by the name of S. Fee, who was a justice of the peace of Pottawatomie county; that the letter "S." represented his first name; that "Fee" was his surname, and that the letters "J. P." represented the words "Justice of the Peace." And therefore we shall presume that the affidavit was regular and valid.

IV. It is also claimed that the petition in the divorce case, though verified by the oath of the plaintiff, also the affidavit for service of summons by publication, and also the affidavit filed in lieu of sending a copy of the petition and publication notice to the defendant, were all false and fraudulent, and that the plaintiff in the divorce case had full knowledge of their falsity and untruthfulness. And therefore it is further claimed that the judgment rendered in the divorce case was rendered without jurisdiction, and is void; and the case of *Mastin v. Gray*, supra, and cases like it, are cited as authority. On the other hand, it is claimed that although the petition and the two affidavits may be false and fraudulent, still that such things do not render the judgment void, but at most only voidable, and that the judgment cannot be attacked in this proceeding but only in a direct proceeding instituted for that purpose; and the case of *Ogden v. Walters*, supra, and other cases of like import, are cited as authority. Now we do not think that there is any conflict between these two classes of

cases just mentioned. In the case of *Mastin v. Gray* no service
of summons of any kind was in fact made. While in the
case of *Ogden v. Walters* service of summons was in fact made
by publication. In the first case it was not true as returned
by the constable, that service of summons was made by leaving
a copy of the summons at the usual place of residence of the
defendant, while in the second case it was in fact true that
service of summons was made by publication in a newspaper.
If no service of summons had in fact been made by publica-
tion in a newspaper in the case of *Ogden v. Walters,* nor by
any other mode, then that case would be like the case of
*Mastin v. Gray.* The affidavits for publication and in lieu
of sending a copy of the petition and publication notice to the
defendant, are no part of the service of the summons. They
are simply foundations for such service where service is made
by publication. Where they are sufficient on their face, service
may be made by publication, and by publication alone. But
being foundations for the service by publication, it is of course
necessary that they should be filed, and if they are not filed
a service of summons made by publication without them would
be void. (*Shields v. Miller,* 9 Kas. 390; *Harris v. Claflin,* 36
id. 543.) But where they are valid and sufficient upon their
face, and service by publication is made upon them or in
pursuance of them, no one can afterward impeach such service
or question its validity in a collateral proceeding by showing
that the affidavits were in fact untrue. No one would think
of impeaching an attachment of property, real or personal, in
a collateral proceeding because he might think that the grounds
set forth in the affidavit for the attachment were untrue and
false. Such a thing could be done only in a direct proceed-
ing instituted for that purpose, as upon a motion to quash, or
to set aside, or to vacate, or to discharge the attachment or
some part thereof.

We shall pass over the claim that the judgment in the
divorce case is void for the reason that the allegations of the
plaintiff's petition in that case were untrue and false, for we
do not think that it has ever been held by any court that a

judgment was absolutely void because the allegations contained in the plaintiff's petition were in fact untrue or false. We now come to the question whether the judgment in the divorce case is void because of the untruthfulness of the affidavits for service by publication, and in lieu of sending a copy of the petition and publication notice to the defendant in that case.

In the case of *Ogden v. Walters*, supra, it was held that the affidavit for service by publication could not be contradicted in a collateral proceeding for the purpose of avoiding the judgment. That case, however, does not quite cover all the elements of service contemplated by the statute in a case like the present. That case was an action in the nature of eject-ment; this is an action for divorce. In that case, if the defendant was a non-resident, and if service of summons in the ordinary mode could not be made upon him in this state, then the affidavit for service of summons by publication in a news-paper, and such service without anything further, was all that was necessary in the way of service, to give the court juris-diction; but in this case, which is an action for divorce, something more is necessary. (See Civil Code, § 641.) In addition to the affidavit for service by publication and the publication itself, it is also necessary either to send to the defendant a copy of the petition with a copy of the publica-tion notice, or else to make and file an affidavit that the resi-dence of the defendant is unknown, and that the plaintiff cannot ascertain the defendant's residence by any means within the plaintiff's control. The sending of the copy of the peti-tion and the publication notice to the defendant, when that is done, is, according to the decision of this court in the case of *Lewis v. Lewis*, 15 Kas. 181, a part of the service. But the filing of the affidavit in lieu of sending a copy of the petition and publication notice to the defendant, when that is done, is no part of the service. (*Hemphill v. Hemphill*, 38 Kas. 220, 222.) The *service* in such a case is *only by publication*. We would therefore think the principles enunciated in the case of *Ogden v. Walters*, supra, must govern in the decision of this

case. The affidavits filed for service by publication, and in lieu of sending a copy of the petition and publication notice to the defendant, are no parts or portions of the service itself. *The service includes only the publication.* And such a service is complete and sufficient when it is made, and it is the service which gives the court jurisdiction. Of course it is necessary that the affidavits should be filed, for they are the foundations for the service, and if they should not be filed the service would be void. (*Shields v. Miller,* 9 Kas. 390; *Harris v. Claflin,* 36 id. 543.) But where the affidavits are filed, and where they are sufficient upon their face, service may then be made by publication, and such service will be valid, and the affidavits cannot afterward be impeached collaterally. And it is not necessary that they should be impeached in that mode, for the defendant in a divorce case has ample remedies without attempting to impeach the affidavits collaterally. Take, for instance, the present divorce case: if the defendant in the present divorce case did, at any time before the judgment in such case was rendered, receive actual notice of the pendency of the divorce proceedings within time to appear in court and make defense, she could have done so. She could then have filed a motion to set aside the service, or she could have answered to the merits. But if she did not receive any such actual notice within such time, then she could, at any time within six months after the judgment was rendered, have appeared in court and procured the judgment to be vacated or opened up under § 77 of the civil code, so that she could have made any defense to the action which she might have had. (*Hemphill v. Hemphill,* 38 Kas. 220.) Or if she did not receive any such actual notice within time to have had the judgment opened up or vacated under § 77 of the civil code, then she might have had the judgment opened up and vacated under some one of the provisions of § 568 of the civil code, as subdivision fourth or seventh; or she might, by an action in the nature of a suit in equity, have had it opened up or vacated because of the fraud practiced by the plaintiff in procuring it. But we do not think that she could treat the

judgment as an absolute nullity, and void in a collateral proceeding, merely because of the falsity of the petition and the two affidavits.

"A divorce granted by the court of the domicile of both parties is valid everywhere under the constitution of the United States, and under the principles of international law, although the defendant has neither been summoned nor voluntarily appeared, provided that the laws of the parties' domicile as to notice by publication or otherwise have been complied with." (5 Am. & Eng. Encyc. of Law, 759, and cases there cited.)

" Want of jurisdiction in the court passing it is the only cause which renders a decree of divorce absolutely void; fraud does not, nor does irregularity." (5 Am. & Eng. Encyc. of Law, 843, and cases there cited.)

See also, in this connection, *Simpson v. Kimberlin*, 12 Kas. 580; and as to collateral attacks upon judicial proceedings, see *Head v. Daniels*, 38 Kas. 2, 12, 13, and cases there cited.

V. But treating the judgment in the divorce case as not void, but at most as only voidable, then may it be set aside or vacated in this action because of the fraud perpetrated by the plaintiff in the divorce action in procuring his decree of divorce? Under the facts of this case as alleged by Mrs. Knoyle in her pleadings, we would think not. Treating the divorce judgment as not void, but only as voidable, then it devolved upon Mrs. Knoyle to set forth facts sufficient in her pleadings to show that the judgment should be set aside or vacated. This we think she did not do. She did not state that she did not have actual knowledge of the divorce proceedings while they were pending in the district court of Pottawatomie county. This we think is fatal to her present case. Where a fraud is about to be perpetrated upon an individual by obtaining a wrongful judgment against him, and the court in which the judgment is sought has jurisdiction to hear and determine the matter, such individual cannot lie still and permit the fraud to be perpetrated upon him, and afterward complain. He must use reasonable diligence to prevent the fraud from being perpetrated upon him. This is indicated to a large

extent by § 77 of the civil code, relating to the opening-up and vacating of judgments rendered upon service by publication. And it is also just what the authorities seem to hold in almost all kinds of cases. In the case of *Snow v. Mitchell,* 37 Kas. 636, 639, it is held by this court that "no defense can be set up against a judgment which might with proper diligence have been interposed in the action in which the judgment was rendered." (See also *Boyd v. Huffaker,* 40 Kas. 634, 636, and cases there cited; also *Guinard v. Heysinger,* 15 Ill. 288.) Also, where a fraud is perpetrated upon an individual, he must commence his action to defeat or avoid the same within two years next after he has knowledge of the same, or his action for this purpose will be barred by the two-years statute of limitations. (Civil Code, § 18, subdiv. 3.) Now the fraud in this case was consummated on June 13, 1885, when the plaintiff in the divorce action procured his decree of divorce; and Mrs. Knoyle, the defendant in that action, the plaintiff in this, never attempted to defeat or avoid the rendering of that decree, or the decree itself, by any motion, defense, or action, or other proceeding, until she filed her reply in the present action, on August 24, 1887; and she did not then allege in her reply that she did not have full knowledge of all the divorce proceedings while they were occurring, and of the decree of divorce at the time when it was rendered, or that she did not discover the fraud perpetrated upon her by her husband in his procuring his decree of divorce, within less than two years next prior to the filing of her reply. This we think is also fatal to her case. For these reasons we think the plaintiff's reply was insufficient. To have made it good she should have stated that she did not have knowledge of the divorce proceedings within time by the exercise of reasonable diligence to appear in court and make her defense; and she ought also to have stated in her reply that she did not discover the fraud perpetrated upon her by her husband's procuring the divorce until within less than two years next preceding the filing of her reply. The reply being insufficient,

the demurrer thereto should have been sustained by the district court.

The judgment of the district court will be reversed, and the cause remanded for further proceedings.

All the Justices concurring.