JOSEPH SHIPPEN v. A. S. KIMBALL.

1. NATURE OF ACTION—*Statement in Affidavit.* In an action to foreclose a mortgage based on service by publication only, the affidavit to obtain the same alleged that personal service could not be made upon the defendant within the state, and "that this is an action brought for the recovery of real property under a mortgage, situated in said county of Lyon," and it was contended that the affidavit did not sufficiently state the nature of the action. *Held,* That it is imperfect in this respect, but not so defective as to render a judgment based thereon null and void or subject to a collateral attack.

2. MORTGAGE—*Foreclosure—Parties—Judicial Sales, not Void.* Wells entered a tract of public land at the United States land office, and obtained a certificate of entry, and immediately thereafter, and before the patent was issued, gave a mortgage thereon to Walker, to secure the purchase-money which was furnished by Walker, which mortgage was at once placed upon record. Shortly afterward Wells conveyed his interest in the land to C., by an assignment of the certificate of purchase, but this assignment was never recorded nor brought to the notice of the mortgagee. Later, default was made in the payment of the debt secured by the mortgage, and Walker brought an action against Wells, the mortgagor, to foreclose, but obtained only constructive service upon him, and, not knowing that C. was the assignee of the mortgagor, he was not made a party to the proceeding. A decree of foreclosure was rendered, and the land sold thereunder to Walker, which sale was confirmed by the court, and a proper sheriff's deed was executed to Walker for the land. Afterward, in pursuance of a judgment rendered against Walker, and a judicial sale on said judgment, the sheriff duly executed and delivered to K. a sheriff's deed, which conveyed the entire interest of Walker in the land, thus giving to K., through the foreclosure of the mortgage, the judgments, and the judicial sales, a clear chain of title from Wells, the common source of title, before C., who also claims under Wells, had any title or claim whatever on record. Up to this time the land was vacant, unoccupied, and unimproved, and the patent for the same had not been issued. Afterward the patent from the United States was issued directly to C., as the assignee of Wells. *Held,* That as C. had no title of record, the failure to make him a party to the foreclosure proceedings did not render the judicial sales and the purchases by Walker and K. void; and *further held,* that the equities and interest of the purchasers at such sales are superior and paramount to those of C.

3. PUBLIC LAND—*Assignment of Certificate of Purchase—Not Recorded —When Void.* An assignment of the certificate of purchase of land

from the United States may, under the registry laws, be proved or acknowledged and filed for record in the office of the register of deeds; and where it is neither proved nor acknowledged nor so filed for record, it is void under the registry laws of 1859 as to all subsequent purchasers for a valuable consideration without notice, (Act of 1859 relating to Conveyances, § 13,) and void under the registry laws of 1868 as to all persons except such as have actual notice of the assignment. (Act of 1868 relating to Conveyances, §§ 19, 21.)

### *Error from Lyon District Court.*

THE facts are substantially stated in the opinion. Judgment for *Kimball,* at the September term, 1888. *Shippen* brings the case to this court.

*C. N. Sterry,* for plaintiff in error.

*J. R. McClure,* for defendant in error.

The opinion of the court was delivered by

VALENTINE, J.: A controversy arose between the parties to this proceeding with reference to the ownership of the southwest quarter of section 10, township 18 south, of range 10 east, situated in Lyon county, Kansas. Each of the parties had obtained a judgment upon constructive service quieting the title to the real estate in himself, but these judgments were vacated by stipulation, and the question as to who was the actual owner of the real estate as between them was submitted to the trial court without pleadings, and upon an agreed statement of facts, under the provisions of § 525 of the civil code. From the stipulated facts it appears that the land in controversy was purchased at the United States land office at Lecompton on October 6, 1859, by one Wesley Wells, by the location of a land warrant upon it, issued under the act of Congress of March 3, 1855. On the day of the location Wesley Wells executed to T. H. Walker a mortgage on the same tract of land, to secure the payment of a promissory note given by him to Walker for the sum of $175.70, being the purchase-money for the land so purchased. The mortgage was recorded on October 7, 1859. On November 25, 1859, Wesley Wells made a written assignment of the certificate of

location issued to him by the land office, and delivered the same to Morris Cohn, and authorized the assignee to receive the patent for the land, and on May 4, 1878, the United States issued to Morris Cohn, as the assignee of Wesley Wells, the patent for the land in controversy.  This assignment of the certificate of location was never recorded nor brought to the notice of either Walker or Kimball until after each had procured his title.  On August 10, 1863, Walker instituted a foreclosure proceeding against Wesley Wells 'alone, and endeavored to obtain constructive service upon him.  The affidavit made and filed for the purpose of obtaining a constructive service stated, among other things, "that the service of a summons cannot be made on the said Wesley Wells within the state of Kansas; that this is an action brought for the recovery of real property under a mortgage, situated in said county of Lyon."  The notice published pursuant to the affidavit reads as follows:

"Wesley Wells, in parts unknown, will take notice that Thaddeus H. Walker, of the county of Washington, state of New York, did, on or about the 10th of August, 1863, file his petition in the district court of the fifth judicial district of the state of Kansas, within and for the county of Lyon, in said state, against Wesley Wells, setting forth that the said Wesley Wells gave a mortgage to the said Thaddeus H. Walker, on the southwest quarter ($\frac{1}{4}$), of section ten (10), township eighteen (18), range ten (10), situated in said county of Lyon, to secure the payment of one hundred and seventy five dollars and seventy hundredths ($175.70), according to the terms of a certain note referred to in said mortgage, and dated October 6, 1859, payable 12 months after date, with interest from the date until paid at the rate of 4 per cent. per month.  The said Wesley Wells is further notified that he is required to appear and demur to or answer said petition on or before the 23d day of October, 1863, or the same will be taken as confessed, and judgment rendered accordingly."

At the October term, 1863, a judgment was rendered in favor of T. H. Walker, decreeing a foreclosure and sale of the land described in the mortgage, and upon an order of sale is-

sued on the judgment a sale of the real estate was made by the sheriff of Lyon county on March 3, 1866, to T. H. Walker, which sale was confirmed by the court, and the sheriff executed and delivered to Walker a deed for the premises. On July 24, 1877, the sheriff of Lyon county, in pursuance of a judgment theretofore rendered by the district court against T. H. Walker, and a sale on said judgment, duly made, executed and delivered to A. S. Kimball a sheriff's deed, purporting to convey the land in controversy to A. S. Kimball; and it is agreed that Kimball by the deed received a conveyance of any and all interest which Walker ever had or obtained in the land in controversy. On May 4, 1878, Morris Cohn, who obtained the patent for the land as the assignee of Wesley Wells, conveyed and transferred all the title and interest which he acquired in the land to Joseph Shippen, the plaintiff in error, and he founds his title to the real estate upon this transfer and conveyance. The land in controversy has always been vacant, unoccupied, and unimproved, and at the time when the foreclosure proceeding of Walker against Wells was commenced in the district court of Lyon county, and ever since, Wells has been absent from the state of Kansas, and service of summons could not be had upon him within the state. Upon these facts the trial court determined that the equity of the case was with Kimball, and that he was the owner and entitled to the possession of the land in controversy. Shippen excepted, and comes here asking a reversal.

It is conceded that when Wesley Wells purchased the land in controversy from the United States, on October 6, 1859, he became the absolute owner thereof with the entire title thereto, except the bare, naked legal title, which still remained in the United States, and would remain in the United States until the patent for the land should be issued. It is also conceded that Wells then had the right to mortgage the property to Walker as he did, or to any one else, or to dispose of the same as he might see fit; and it must be held, under the authorities, that the service of summons in the foreclosure suit of Thad-

deus H. Walker against Wesley Wells, made by publication,

**1. Nature of action—statement in affidavit.**

cannot in this collateral proceeding be held to be void, but must be held to be valid, although the affidavit for service by publication is to some extent defective. (*Ogden v. Walters*, 12 Kas. 282; *Claypoole v. Houston*, 12 id. 324; *Pierce v. Butters*, 21 id. 124; *Gillespie v. Thomas*, 23 id. 138; *Rowe v. Palmer*, 29 id. 337; *Harris v. Claflin*, 36 id. 543, 551; *Bogle v. Gordon*, 39 id. 31.) It is also conceded that, except for the title of Walker and Kimball to the property in controversy, the title of Shippen would be good, and he would be the owner of the property. All the transactions and proceedings had in the present case, giving to Walker his title, were had under the registry laws of 1859, chapter 30; while all the transactions and proceedings had giving to Kimball his title and transferring Walker's title to Kimball, were had under the registry laws of 1868, (Gen. Stat. of 1868, ch. 22,) which laws, with some amendments, are still in force. (Gen. Stat. of 1889, ch. 22.) And all the transactions and proceedings had which give to Shippen his title were had under the registry laws of 1859, up to October 31, 1868, when they were afterward had under the registry laws of 1868. We think the questions involved in this case are governed and settled principally by the registry laws.

Both Kimball and Shippen claim title to the property in controversy under the same original owner, Wesley Wells, who was the original purchaser of the land from the United States. Walker furnished the purchase-money; Wells purchased the property, received the certificate of purchase, and then mortgaged the property to Walker to secure the purchase-money, and this mortgage was immediately placed upon record. Afterward Wells assigned his certificate of purchase to Cohn; but it does not appear that this assignment was ever

**3. Public land — assignment of certificate of purchase — not recorded — when void.**

proved or acknowledged or filed for record, as it might have been under the provisions of the registry laws; and hence the assignment was void under the registry laws of 1859 as to all subsequent purchasers for a valuable consideration without notice;

12 —47 KAS.

(Act of 1859 relating to Conveyances, § 13;) and void under the registry laws of 1868 as to all persons except such as had actual notice thereof. (Act of 1868 relating to Conveyances, §§ 19, 21.) Afterward, Walker foreclosed his mortgage against Wells and obtained a sheriff's deed for the property; and afterward, and on July 24, 1877, Kimball procured Walker's interest by virtue of another sheriff's deed, executed under a judgment against Walker. Afterward, the patent for the land was issued by the United States to Cohn as the assignee of Wells, and afterward Shippen succeeded to the interest of Cohn. In our opinion Kimball's interest in the land, as found by the trial court, is superior and paramount to that of Shippen. The assignment of the certificate of purchase by Wells to Cohn was, under the registry laws of both 1859 and 1868, void as to Walker and Kimball as purchasers, and, under the registry laws of 1868, was void as to them in all respects and as to every other person except such as had actual notice of the assignment. If it (the assignment) did not *affect* real estate at all, then of course it was void as to all persons; but if it did *affect* the real estate in controversy, then it was void as aforesaid for the reason that it had never been proved, or acknowledged, or filed for record, within the requirements of the registry laws. Neither Walker, as the purchaser of the land at the foreclosure sale, nor Kimball, the purchaser of the land at the sheriff's sale on the judgment against Walker, nor anyone else, at that time not having actual notice of Cohn's interest, was bound to take notice thereof, for the reason, as before stated, that such interest was not known by them nor shown by any record, and was void as to them. It was a mere secret equity, undiscoverable from any record, and void as aforesaid under the registry laws. No one not having actual notice is bound to take notice of what the statutes say is a nullity. At the time of the sale of the property to Walker, Cohn had no interest therein under the registry laws as against Walker, and at the time of the sale of the property to Kimball, Cohn had no interest therein under the registry laws as against Kimball, or as against anyone else not having actual

notice of Cohn's interest. Under the registry laws, and as to Walker, Wells was the absolute and entire owner of the property at the time of the first sale, and Cohn had no interest therein; and under the registry laws, and as to Kimball, Walker was the absolute and entire owner of the property, and Cohn had no interest therein, and both Walker and Kimball obtained a clear title to the property by their purchases. Besides, how could Walker know that he should make Cohn a party to his foreclosure suit when he did not know, and had no reasonable means of knowing, that Cohn had any interest in the land? On the other hand, as Cohn's and Shippen's claims were wholly under Wells, they were bound, after the mortgage from Wells to Walker was recorded, to take notice of the recorded mortgage, and bound to take notice of the records of the register's office and of the district court as to what became of the mortgage, or what was done with reference to it, until they themselves made it known by the records, or in some other way, that Wells had been completely divested of his interest in the property, and that they had succeeded to his rights. The equities of the case are certainly much stronger in favor of Kimball than of Shippen. Kimball's rights are prior in time, going back to the original purchase of the property from the government and the mortgage to Walker, and are founded upon a claim for the purchase-money, and are also largely founded upon or evidenced by records, and so much so that Shippen was bound to take notice of them; while Shippen's claims are not founded upon or evidenced by records at all, but are secret, hidden, and practically undiscovable equities.

2. Mortgage—
foreclosure—
parties—judi-
cial sales, not
void.

The judgment of the court below will be affirmed.

HORTON, C. J., concurring.

JOHNSTON, J.: While I agree with the decision made upon the first point in the case, that the affidavit which formed the basis of jurisdiction was not so defective as to render a judg-

ment based thereon absolutely void, I am unable to agree with the second and third propositions that have been decided, or with the judgment of affirmance which has been rendered. It seems to me that the foreclosure and proceedings against Wells were a nullity for the reason that Wells had parted with his interest in the land before the foreclosure proceeding was begun, and that Cohn, who had before that time obtained the interest of Wells, was not made a party to the action. Wells entered the land and became the owner of all except the naked legal title, which, as has been stated, remained in the United States until May 4, 1878, long after the action of foreclosure was ended. It is true that Wells had authority to execute the mortgage to Walker, and also that the mortgage was duly recorded before Wells transferred his interest in the land to Cohn; and it is also true that, when Walker brought the action against Wells, he was the only person who by the record appeared to have any interest in the land. Notwithstanding this, I am of opinion that the foreclosure proceedings were absolutely null and void, for the reason that the assignee of the mortgagor, the only person who had any estate in the land, was not made a party. Wells sold the land to Cohn on November 25, 1859, shortly after the mortgage was executed, and thus Cohn acquired the entire interest held by Wells long before the foreclosure action was begun. It would hardly seem that the owner of the equitable title could be divested of his interest by a proceeding to which he was not a party and of which he had no notice. It is true that he did not place on record the assignment which had been made on the certificate of location, but I do not regard either the certificate or the assignment thereon as a conveyance or an instrument affecting real estate which under the statutes could have been recorded; and no record could be properly made by him until the patent was obtained from the United States. Walker acquired no estate in the land by the execution of the mortgage, and could not maintain ejectment against the mortgagor, or any one claiming under him, even after condition broken, until there had been a foreclosure and sale of the mortgaged

premises.  The purpose of a foreclosure is to divest the land of the equity of redemption or the right of the holder of the legal title; but where the mortgagor has transferred his interest and the equity of redemption to another, who is not a party to the proceeding, what interest is affected by such a proceeding, and whose interest can be transferred by a sale under such a proceeding?  Certainly the interest of one who is not before the court is not affected; and as the mortgagor, who was made a party, had no interest, there was nothing for the jurisdiction of the court to take hold upon, and therefore the judgment rendered is absolutely void.

It must be remembered that Wells had no personal notice, and therefore a personal judgment could not be given against him for the debt secured by the mortgage; and, as he had parted with all his interest in the land, he was neither a necessary nor a proper party in a foreclosure proceeding where only constructive service was had.  He was the only party brought into court, and he had no estate or interest to be affected by the proceedings.  The patent to the land was issued directly to Cohn, so that he now holds the complete legal title. The record does not show that the sheriff's deed to Walker, or the one subsequently made to Kimball, was ever placed on record, and at this time Shippen has a perfect title, so far as the record shows.  While there are some equities on the side of the defendant in error, it is difficult to understand how there can be any validity in a judgment given in a case in which there was no defendant who had any interest whatever in the subject-matter of the suit, and, as was said in *Shields v. Miller*, 9 Kas. 397, "the judgment cannot be void and the sale made under it legal and valid.  If the judgment is illegal and void, the sale must also necessarily be illegal and void."  If it is granted that by this proceeding against the mortgagor alone, and the sale made thereunder, Kimball acquired the interest and was subrogated to the rights of Walker, the mortgagee, still he would only have a lien against the premises, and could not divest the same of the equity of redemption except by bringing Cohn, or whoever owned the

same, into court in some proper proceeding for that purpose.
He could have no greater interest in the land than was held
by Walker, and it was ruled in an early case that a mortgage
"is a mere security, although in the form of a conditional con-
veyance, creating a lien upon the property, but vesting no
estate whatever, either before or after condition broken. It
gives no right of possession, and does not limit the mortgagor's
right to control it, except that the security shall not be im-
paired. He may sell it, and the title would pass by his con-
veyance, subject, of course, to the lien of the mortgagee."
(*Chick v. Willetts*, 2 Kas. 391.)

From these considerations I am led to the opinion that
Cohn was not divested of his interest by the foreclosure pro-
ceeding, and that Shippen, who holds under him, has the para-
mount title to the land. As sustaining this view, I cite *Britton
v. Hunt*, 9 Kas. 228; *Lenox v. Reed*, 12 id. 223; *Richards v.
Thompson*, 43 id. 213; *Curtis v. Gooding*, 99 Ind. 45; *Watson
v. Spence*, 20 Wend. 260; 2 Jones, Mortg., §§ 1404–6.

The judgment of the district court should be reversed, and
the cause remanded with the direction to enter judgment in
favor of the plaintiff in error.